John Mowat, Appellee, v. William D. Sandel, Trading as W. D. Sandel & Company, Appellant.

**Gen. No. 35,089.**

Opinion filed July 9, 1931.

Joseph H. Hinshaw, for appellant; Oswell G. Treadway, of counsel.

Benjamin B. Morris, Emanuel M. Schwartz and Aaron R. Eppstein, for appellee; Aaron R. Eppstein, of counsel.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

Plaintiff brought an action against the defendant to recover damages claimed to have been sustained by him through the negligence of the defendant in backing his truck, striking plaintiff's automobile in which plaintiff was riding, damaging the automobile and injuring the plaintiff. There was a verdict and judgment in plaintiff's favor for $3,000, and the defendant appeals.

The record discloses that about 5:45 p. m., February 4, 1930, plaintiff was driving his Ford automobile northwesterly on South Chicago avenue, at or near the intersection of that street and Ingleside avenue. In-

gleside avenue runs north and south and South Chicago avenue is a southeasterly and a northwesterly direction. Defendant's truck was standing a short distance east of Ingleside avenue, heading in a northerly direction at the northerly side of South Chicago avenue, and as the Ford was passing in the rear of the truck there was a collision which damaged the Ford automobile and plaintiff claimed he was injured.

Plaintiff's theory of the case was that his automobile was passing the rear of the truck, going about three or four miles an hour and that the truck backed up, striking the automobile. Defendant's theory of the case was that the truck was standing still, that it did not back up; that plaintiff was driving his automobile at about 35 miles an hour, and as he was passing the truck brushed against the tail gate.

The defendant contends that the judgment should be reversed because counsel for the plaintiff in the selection of the jury by questions informed the prospective jurors that the suit was being defended by an insurance company and that defendant carried liability insurance. One of the questions put by counsel for the plaintiff to a prospective juror, and of which complaint is made, was: "Have you ever been in the insurance or real estate business?" Thereupon, counsel for the defendant suggested that the court go into chambers, which was done, and afterwards this prospective juror was excused. Another complaint is that plaintiff's counsel asked of another man in the panel, "What is your business?" and the reply was, "Insurance." Thereupon counsel for plaintiff said, "You are excused." A number of other matters are objected to in the selection of the jury. We have carefully considered all of them, but are of the opinion that we would not be warranted in disturbing the verdict on account of the objections made. A number of the men who served on the jury drove automobiles and it is

almost common knowledge that persons driving automobiles carry liability insurance, and we assume that the men called to act as jurors had the qualifications required by the statute and were cognizant of the situation. We do not, however, want to be understood as approving of everything done by counsel for the plaintiff in selecting the jury. In this connection there were a great many references by him to Thomas M. Burns, but who he was or what he had to do with the case is more or less a mystery. We have not been informed by either side as to what connection, if any, Burns had with the case.

Complaint is also made by the defendant to the overruling of objections made by him to questions put by counsel for plaintiff to Dr. Morrison. Dr. Morrison was the physician who attended plaintiff professionally after the accident. He was asked, from his treatment of plaintiff for the injuries claimed to have been sustained on account of the accident whether, in the doctor's opinion, plaintiff's condition was temporary or permanent. Hypothetical questions were then put to the doctor and it is claimed by the defendant that his objections should have been sustained because the questions did not call for an opinion based upon a reasonable degree of medical certainty; that the questions were too broad and speculative and invaded the province of the jury. But we think none of these objections can be sustained. Upon a reading of these questions and the objections, we have no doubt that the jury clearly understood the testimony of the doctor.

A further complaint is made that the court unduly limited the cross-examination by counsel for the defendant of a doctor who testified to hypothetical questions put to him. The hypothetical questions contained an assumption of a great many facts—counsel for defendant say 70—and on the cross-examination

counsel for the defendant sought to elicit from the doctor whether some of these elements might not be eliminated and still the doctor's answer would be the same as it was to the hypothetical question. Objection was made by counsel for plaintiff to these questions and sustained, the court taking the position that the questions were improper but that counsel for the defendant was at liberty to frame a hypothetical question according to his theory of the case leaving out such elements as counsel desired. We think the ruling was wrong. *City of Chicago v. Farwell,* 284 Ill. 491; *People v. Zito,* 141 Ill. App. 534; *Spohr v. City of Chicago,* 206 Ill. 441; *Stemons v. Turner,* 274 Pa. St. 228; 22 Corpus Juris, p. 724.

In the *Farwell* case a real estate expert witness testified in a special assessment case as to the benefits that would be derived by certain real estate in the construction of a certain improvement. In stating the rule as to the cross-examination of such witness the court said, p. 499: ''A witness may be cross-examined in regard to the basis of his opinion as to the amount of such increase, but an objection that he is unable to separate the aggregate and state the precise sum which each element of advantage contributed to the total goes to the weight of his opinion and not to his competency. . . . If the witness has based his opinion in a material degree upon elements of advantage which cannot be legally considered and which he cannot or will not separate from the causes which may be legally considered, such opinion is not competent.''

In the *Zito* case the court in discussing cross-examination of expert witnesses, said: ''Of all witnesses experts are those of whom the most searching cross-examination should be permitted.'' And in the *Spohr* case, in discussing the same question, the court said that ''the cross-examiner is entitled in every instance

to demand a free disclosure, minutely and in detail, of all the facts and circumstances upon which the expert's opinion has been grounded,'' and that great latitude should be allowed in such cross-examination. And the Pennsylvania court, in the *Stemons* case, in considering the cross-examination of the osteopathic physician who had testified as an expert and expressed an opinion in answer to a hypothetical question, said that full latitude should be allowed the cross-examiner to ascertain what factors the witness took into account in arriving at his conclusion, and what factors, if any, might be disregarded. The court there said (p. 235): "On cross-examination of an expert witness, who has expressed an opinion in answer to a hypothetical question, full latitude should be allowed to ascertain just what the factors were which the witness took into account in arriving at his conclusion, and what, if any, he disregarded; otherwise the integrity and value of his opinion cannot be investigated. Under such circumstances, a broad range of inquiry is permitted and the expert witness may be asked as to the basis of his opinion, including statements on which he has relied, in order to show the reasonableness or unreasonableness of the opinion expressed, and to test its value. His attention may be called to any fact, omitted from the hypothetical question asked on direct examination, or the facts stated in the hypothetical question which are deemed unimportant may be sifted out.''

In view of the foregoing well established rule of law, we think the cross-examination of the doctor was unduly limited, and since the defendant argues that the verdict is excessive, we are unable to say that the ruling was not prejudicial.

Defendant further contends that the court erred in refusing to give instructions numbers 2, 5 and 6, requested by the defendant. Instruction 2 was abstract in form and therefore it was not error to refuse it.

By instruction 5 the defendant sought to have the jury instructed that whether there was a tail light on defendant's truck was immaterial if they found from the evidence that plaintiff saw the truck when he was a reasonable distance from it and could see it at all times thereafter. We think the instruction was properly refused. The evidence was conflicting as to whether the tail light on the truck was lit at the time, also as to the speed of the Ford and whether the truck backed up. The jury might find that if the tail light was lit plaintiff might have been able to have seen the truck before he did, and whether there was a tail light might have some bearing on the issue. Furthermore the phrase "reasonable distance" was apt to confuse.

Refused instruction 6 was as follows: "You are instructed that if you believe from the evidence that the plaintiff and the employees of the defendant were both guilty of negligence which proximately contributed to the injury or damage complained of, then you are instructed that you have no right to compare the negligence of the plaintiff with that of the defendant, and find a verdict according to which side you think was guilty of the greater degree of negligence, for in such case it is the law that it makes no difference which was guilty of the greater degree of negligence. Under such circumstances the plaintiff cannot recover." The only answer made by counsel for plaintiff justifying the refusal of requested instruction number 6 is that it was but a cautionary instruction and therefore it was discretionary with the court to give or refuse it, and further that the same subject was covered by instruction number 9, given at defendant's request, which told the jury that plaintiff was just as much in duty bound to exercise care as the employees of the defendant. We think neither of these answers is adequate. The instruction was not cautionary, but told the jury that they could not compare the negligence of

the parties and this was not in any way covered by given instruction number 9. The jury might think that defendant was more negligent than was plaintiff and would bring in a verdict for the plaintiff under misconception of the law. The question of liability being in dispute as to which side was to blame, we think it was prejudicially erroneous to refuse this requested instruction.

Complaint is further made that the court erred in giving instructions numbers 3, 4, 5 and 6, at plaintiff's request. Without discussing instruction 3, we think it sufficient to say that we think there was no error in giving it. By instruction 4 the jury were told that it was not necessary that the particular injury and the particular manner of its occurrence could reasonably have been foreseen in order to make a negligent act the proximate cause of an injury, but if the jury believed from a preponderance of the evidence that the defendant was negligent, as charged in the declaration, "then it is sufficient if the defendant could have foreseen in the exercise of reasonable care that some injury might proximately result from the negligence alleged, if you believe the defendant was negligent." We think this instruction ought not to have been given because we are of the opinion that it would not enlighten the jury but tend to confuse them. The jury would readily understand the issues involved without such an instruction.

Instruction number 5 told the jury that it was the duty of a person operating vehicles in public streets to use reasonable care for the safety of other persons and vehicles in the streets, and that if they believed from the evidence that the defendant failed to use such care "as alleged in the declaration," and that such failure to use reasonable care, if any there were, proximately caused the plaintiff's injury, and plaintiff was in the exercise of ordinary care for his own safety,

then they might find defendant guilty. The complaint is that by this instruction the jury were referred to the declaration for the negligence alleged. While the practice of referring the jury to the declaration has been condemned (*Bernier v. Illinois Cent. R. Co.*, 296 Ill. 465) yet we are of the opinion that the defendant was not prejudicially affected by the giving of this instruction.

By instruction 6 the jury were told in substance that they were not required to believe a thing to be a fact simply because a witness had sworn to it, etc. The complaint is that the instruction did not limit the jury to the conduct of the witness while testifying. We think there was no error in the giving of this instruction. The jurors are supposed to be endowed with ordinary intelligence in determining whether testimony of a witness should or should not be believed.

For unduly limiting the cross-examination of the doctor, and the refusal to give defendant's requested instruction number 6, the judgment of the circuit court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*

McSurely and Matchett, JJ., concur.