# Richard Smith, Appellee, v. Stover Manufacturing Company, Appellant.

## Gen. No. 6,380.

1. APPEAL AND ERROR, § 438*—*when objection on ground of variance too late.* An objection on the ground of variance comes too late when made for the first time on appeal.

2. APPEAL AND ERROR, § 438*—*when question of variance raised too late.* In an action on the case for damages for personal injuries, by an employee where the employer had elected not to provide and pay compensation under the Workmen's Compensation Act of 1913, and it was averred that the defendant was not operating under the provisions of the act and that notice in writing of its election was filed with the State Bureau of Labor Statistics, and the proof showed that a notice of election under section 2 of the Act [Cal. Ill. St. Supp. 1916, ¶ 5475(2)] was filed with the Industrial Board, and this variance between the pleading and proof was urged as ground for reversal, *held* that as the objection to a certified copy of the notice was not made on the ground of variance, the defendant was precluded from availing itself of the objection of variance on appeal.

3. WORKMEN'S COMPENSATION ACT, § 12*—*when evidence sufficient to show that accident occurred in State.* In an action by an employee for damages for personal injuries, where the defendant had elected not to provide and pay compensation, as required by section 2 of the Workmen's Compensation Act of 1913 [Cal. Ill. St. Supp. 1916, ¶ 5475(2)], and objection was made that the proof failed to show that the accident occurred in Illinois, and that therefore the court could not know whether the act was applicable, *held* that although it failed to appear that the city mentioned by witnesses as the place where the accident occurred was in Illinois, there was enough in the evidence to leave no question that appellant's factory was located and the accident occurred in such city.

4. EVIDENCE, § 108*—*when experiments not competent.* Where the plaintiff in a personal injury case was injured while engaged in moving a heavy piece of machinery across a railroad track and over a plank bridge between two buildings of the defendant, and the defendant offered to prove by a witness that while the locality was in the same condition as on the day of the accident he took a machine exactly like the one in question and placed it on the bridge and took measurements of the depression caused thereby, *held* that experiments were not competent unless the circumstances under

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

which they were conducted were very similar to those connected with the act to be illustrated, and that such offer by the defendant had not brought the evidence within the rule stated.

5. EVIDENCE, § 378*—*when opinion of witness is not competent.* The question whether the place of an accident and the appliances used by a servant were reasonably safe are ultimate facts in issue and therefore the opinion of a witness on those questions is not competent.

6. EVIDENCE, § 279*—*when exclusion of skiagraph is of little importance.* Where, in a personal injury case, the plaintiff introduced a skiagraph of his injured arm and one of his uninjured arm, and sufficient foundation was thereafter laid for the introduction by the defendant of a skiagraph of a case somewhere near similar to the one in question, and an objection to the introduction of such skiagraph was sustained, but the witness was permitted to testify that skiagraphs did not represent true conditions of dislocated bones, and also to give other testimony as to the reliability of skiagraph pictures, *held* that under the circumstances it was of little importance whether the jury were or were not permitted to see pictures of other somewhat similar cases.

7. TRIAL, § 288*—*when error to assume that court is laying down proposition of law.* It is error to assume that a court, charged with the duty of passing on the facts of a case, is laying down a proposition of law in stating its opinion as to such facts.

8. APPEAL AND ERROR, § 1238*—*when party cannot complain of converting of proposition of fact into one of law.* A party who induces a court to convert a proposition of fact in an instruction into one of law in his favor cannot complain of such action.

9. APPEAL AND ERROR, § 1565*—*when modification of instructions not reversible error.* The practice of modifying instructions by erasures and interlineations is condemned, but *held* not to be reversible error.

10. WORKMEN'S COMPENSATION ACT, § 12*—*what must be averred and proved in action to recover for injuries sustained.* Although under section 3 of the Workmen's Compensation Act of 1913 [Cal. Ill. St. Supp. 1916, ¶ 5475(3)], an employer is deprived of various defenses which might have been available at common law, nevertheless negligence of the defendant must be averred and proved in an action to recover for injuries sustained.

11. WORKMEN'S COMPENSATION ACT, § 12*—*when instruction in action for personal injuries not misleading.* In an action by a servant to recover damages for personal injuries, where the defendant had elected not to provide and pay compensation under the Workmen's Compensation Act of 1913, an instruction stating that the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

plaintiff did not assume the risk incident to his employment, *held* not misleading as telling the jury that it was not necessary to prove the defendant's negligence.

12.  APPEAL AND ERROR, § 1256*—*when refusal of instructions may not be assigned as error.*  The refusal to give instructions which are covered by given instructions of the party complaining, in which refused instructions the law is stated less favorably to such party, cannot be assigned as error.

13.  WORKMEN'S COMPENSATION ACT, § 12*—*when refusal of instruction in action for damages for personal injuries is proper.*  In an action by an employee to recover damages for personal injuries, where the defendant had elected not to provide and pay compensation under the Workmen's Compensation Act of 1913, an instruction stating that if the jury found that the negligence of the plaintiff contributed to the accident they might consider such fact in arriving at the amount of damages to be assessed by defendant, and make it less than they would have made it but for the negligence of the plaintiff, *held* properly refused.

14.  APPEAL AND ERROR, § 1622*—*when exclusion of evidence of witnesses unable to speak English intelligently is not reversible error.*  In an action to recover for personal injuries, where two foreign witnesses who had not sufficient understanding of the English language to make their testimony intelligible were called by the plaintiff, and the reporter stated that he could not understand the witness, and defendant's counsel stated that he did not care to cross-examine, but objected to the testimony without its appearing in the record, and the court instructed the jury not to consider the testimony of such witnesses, *held* that there was no reversible error in such proceeding.

15.  APPEAL AND ERROR, § 1236*—*when party may not complain of error in statement of opposing counsel as to making of stipulation.*  Where, in a personal injury case, the defendant's attorney, in proceeding to impeach the testimony of a witness, produced a transcript of the testimony of such witness taken at a former trial and stated that it was stipulated to be a true and correct transcript taken by the official reporter, and thereupon offered the questions and answers appearing in the transcript, and an objection by the plaintiff was sustained on the ground of it not being proper impeachment, and on ·appeal the plaintiff urged that it did not appear that he had joined in the stipulation referred to by defendant's attorney, *held* that the plaintiff should not be heard to so contend after permitting the statement regarding the stipulation to be made without objection.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

16. APPEAL AND ERROR, § 1495*—*when exclusion of impeaching testimony harmless error.* Where, in a personal injury case, impeaching testimony which tended to show that on a former trial a physician was not positive that the condition of the plaintiff came from the injury in question was excluded, *held* that such exclusion was harmless error, as there was no question but that the plaintiff was seriously and permanently injured, and other proof made it certain that there was no former injury.

Appeal from the Circuit Court of Stephenson county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed April 19, 1917.

CHARLES H. GREEN, for appellant.

C. W. MIDDLEKAUFF, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Richard Smith, the appellee, thirty-nine years old, thirteen years in the employ of Stover Manufacturing Company, the appellant, earning about $10 a week, was on February 11, 1915, while so employed, injured when he, with three coemployes, was engaged in moving an ensilage cutter, a heavy piece of machinery, from one of appellant's buildings to another. Appellant had elected not to provide and pay compensation according to the provisions of the Workmen's Compensation Act of 1913 (Hurd's Rev. St. ch. 48, § 126 *et seq.*, Cal. Ill. St. Supp. 1916, ¶ 5475(1) *et seq.*) and given notice of such nonelection as required by section 2 of that Act Cal. Ill. St. Supp. 1916, ¶ 5475 (2). This action on the case was brought to recover for that injury. Plaintiff had judgment on a verdict of $2,500, from which the defendant appeals.

The ensilage cutter weighed from fifteen hundred to two thousand pounds, was four and one-half feet high, two and one-half or three feet wide, and eight feet

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

long. The workmen were attempting to move it by using two dollies, one with a single wheel at the front attached to the cutter and turning like a castor. The other a two-wheel dolly, at the rear, a board two and one-half to three feet long with two wheels not attached, but set under the cutter. They were required to cross over a railroad switch track between two buildings. This space was spanned by a loose plank bridge about ten feet long, made of six planks each between ten and twelve inches wide and two inches thick. The approach to the bridge was of cement with a depression at the edge which the ends of the planks were designed to fit into. There was no support between the ends of the planks. After the dollies were placed under the cutter, four workmen, appellee, Amos Ditzler and two Greeks, proceeded to take it towards the bridge. Appellee was stationed at the one-wheel dolly in front, and steered the course. The other three workmen were behind the machine, pushing. They proceeded through one factory and onto a platform, adjacent to the bridge. When the four workmen approached this bridge they met another workman coming with a wheelbarrow load of material. They turned to one side to allow him to pass and then moved ahead with the cutter onto this plank crossing. Appellee went onto the crossing first, steering the single-wheel dolly. Before the two-wheel dolly and the other three workmen arrived at the crossing the single dolly and appellee were in the middle of the plank crossing. Appellee claims that the plank on which the single dolly rested bent down four to six inches, causing its end to rise above the cement surface, and that one of the two wheels of the rear dolly struck that and slipped back, and the other wheel rolled ahead upon the plank crossing; that he stooped down to move the wheel of the dolly onto the plank, when Ditzler and one of the Greeks pried up with a crowbar on the

other side of the cutter and it fell over onto him, breaking two bones in his left leg, the larger bone of his wrist, and tearing the ligaments which bind the small bone of the wrist to the large bone, inflicting serious and permanent injuries. The declaration in different counts charged as defendant's negligence that it provided no railroad track or smooth planks to move said cutter; that the plank bridge was negligently, carelessly and unskilfully constructed; that the defendant was negligent in employing laborers of a foreign nationality unable to speak the English language; that the laborers were not furnished with proper equipment for doing the work; that an employee of defendant pushed and pried the cutter over onto the plaintiff and that such employee was a foreign-born citizen and unable to speak the English language, and was unskilled and not a proper person to work about the moving of heavy machinery; that the defendant carelessly and negligently employed said laborers; that the laborers were provided with imperfect and insufficient tools and appliances to move the cutter; that the defendant failed to furnish a safe place in which the plaintiff should perform the moving of the cutter.

It was averred that at the time, etc., defendant was not operating under the provisions of "An Act to Promote the General Welfare of the People of this State by Providing Compensation for Accidental Injuries or Death Suffered in the Course of Employment Within this State," and that notice in writing of its election was filed with the State Bureau of Labor Statistics."

The proof showed that appellant's notice of election under section 2 of the Workmen's Compensation Act [Cal. Ill. St. Supp. 1916, ¶ 5475(2)] was filed with the Industrial Board, as there required, and not with the State Bureau of Labor Statistics, as averred in the declaration; therefore, there was a variance between

the pleadings and proof, which appellant urges as a ground for reversal. A certified copy of this notice was offered in evidence by appellee, and objected to on the ground that it was immaterial and not properly certified. The attention of the court was not called to its variance from the pleading. There is no question that it was properly certified and material if it had been properly pleaded. If the court's attention had been called to the real objection, we must presume it would have been obviated by an amendment of the declaration; therefore, appellant cannot here avail itself of the variance. (*Libby, McNeill & Libby v. Scherman*, 146 Ill. 540; *Ransom v. McCurley*, 140 Ill. 626; *Barth v. Hanna*, 158 Ill. App. 20.)

It is objected that the proof does not show that the accident occurred in the State of Illinois; therefore, that we cannot know that our Workmen's Compensation Act is applicable. The trial was at Freeport, Stephenson county, Illinois, and while it may be that it does not specifically appear in a single item of evidence that the Freeport often mentioned by the witnesses was Freeport, Illinois, yet there is enough in the evidence, taken altogether, to leave no question that appellant's factory was there located, and the accident there occurred.

Appellant offered to prove by R. M. Bennethum that some time after, and while the platform or bridge was in the same condition as on the day of the accident, he took an ensilage cutter exactly like the one in question and placed it on the bridge and took measurements as to the depression of the platform caused thereby. The court sustained an objection to that evidence, we think properly, on the authority of *Libby, McNeill & Libby v. Scherman*, 146 Ill. 540. That case is cited and the authorities quite thoroughly reviewed and discussed in *Fein v. Covenant Mutual Benefit Ass'n*, 60 Ill. App. 274, where an experiment was held admissible in evi-

dence; but the rule to be gathered from the cases is that experiments are not competent unless the circumstances under which they are conducted are very similar to those connected with the act to be illustrated. We do not think the offer in the present case brought the evidence within that rule. Appellee claims that one of the six planks upon which the wheel of the front dolly rested, and upon which appellee perhaps also stood, bent four to six inches. The entire cutter was not upon the bridge. It would not have aided this investigation to know that an entire cutter like the one in question might be placed on the middle of the bridge without causing so much depression of any single plank. See opinion of this court in *Upthegrove v. Chicago Great Western Ry. Co.*, 154 Ill. App. 460. The same witness, Bennethum, was shown to be familiar with the usual and customary appliances used in factories, warehouses and freight depots for hauling heavy objects, and with the two-wheel dolly and one-wheel dolly used by appellee, and was then asked by appellant whether such dollies are used in such places for such purposes, and whether the dollies in question were reasonably safe appliances for use at the time in question, and whether the platform (bridge) was a reasonably safe and proper method of connecting the two floorways. The court sustained objections to each of these questions. Whether the place and appliances were reasonably safe were ultimate facts in issue. The court did not err in rejecting the opinion of the witness on those questions. (*Keefe v. Armour & Co.,* 258 Ill. 28.)

On cross-examination, appellee was asked if he testified on a former hearing that he had moved ensilage cutters over those same planks and passageway before, and answered that he did not remember, but that he did not believe he had moved them before. A transcript of appellee's testimony taken on a former

trial was produced and appellant's attorney stated that it was stipulated to be a true and correct transcript of the testimony taken by the official reporter of the court. Appellant then offered questions and answers of appellee appearing in such transcript, from which it appeared that he did testify before that he had moved ensilage cutters over the same platform and passageway, which was objected to on the ground that it is not proper impeaching testimony, and the objection sustained. Counsel for appellee say here that it does not appear that appellee joined in the stipulation as to the transcript. We do not think he should be heard to say that, after hearing the statement made by appellant's counsel without objection. Dr. Snyder, a witness for appellee, was also sought to be impeached by a reading of his testimony offered at a former trial as to the exact nature of appellee's injury, and such impeaching testimony was rejected, and is justified here on the same ground. We think the impeaching testimony should have been admitted, but that it was not of sufficient importance so that its rejection should be held reversible error. Whether appellee had been accustomed to moving cutters over that platform and was therefore familiar with the method of doing the work and the danger went only to the question of his care when he was injured— whether he might be guilty of contributory negligence; but as contributory negligence is excluded as a defense, that question was not very material. Dr. Snyder's testimony varied from his former evidence slightly in matters that were technical and not likely to be well understood by the jury. The impeaching testimony tended to show that on the former trial the doctor was not positive that the condition came from the injury complained of. There is no question that appellee was seriously and permanently injured, and other proof makes it certain that there was no former

injury. We think there are no grounds for the presumption that the jury might have awarded less damages if the proof had been admitted. It is said in appellant's brief: "Plaintiff was severely injured by the accident * * *. His arm was broken and his leg was broken. He was at the hospital from February 11, 1915, to March 27, 1915. He stayed at home fifteen weeks before he was able to walk at all." While there is conflict in the testimony as to the extent of the permanent disability induced by the injury and its effect upon appellee's ability to work, in the future, the above-quoted statement is as favorable to appellant as the evidence warrants in any view of the case, and there is no ground for holding the damages assessed excessive.

Appellee introduced in evidence an X-ray skiagraph of his injured arm, and another of his uninjured arm. Appellant called a doctor as a witness, who stated that in his opinion appellee had comparatively full capacity for manual labor, and based that conclusion on similar conditions in other cases of fractures of a similar type in which there was approximately a similar condition. He said he had skiagraphs of such cases somewhere near being similar to the one in question. The court sustains an objection to the production of such a skiagraph for inspection by the jury, but the witness was permitted to testify that skiagraphs do not represent true conditions of displacements; that they are considered shadowgraphs and do not represent true conditions of dislocated bones, because in broken bones it seldom occurs that there is not some displacement and the focus—the point from which the X-ray emanates—is of pin-point size, and about the average of twelve to fifteen inches from the part to be photographed, and these rays diverge and produce distortion of the true condition; that he thought the injured ulna was not in a parallel plane with the surface of the radius, and

that it would somewhat interfere with appellee's capacity to do manual labor but not as much as the photograph of that type would indicate. It would seem that appellant got the benefit of whatever this witness knew about the reliability of a skiagraph picture, and that it was of little importance in this case whether the jury were or not permitted to see pictures of other somewhat similar cases. It was like many other instances in trials where the witness might or might not, in the discretion of the court, be permitted to illustrate his statements by pictures and objects at hand. Appellant cites the language of the court in *Kruger v. McCaughey,* 149 Ill. App. 444, as follows:

"While sufficient foundation was laid to permit the X-ray skiagraph of appellee's arm to be introduced in evidence, such skiagraph is by no means conclusive as to the conditions actually existing in the arm. The skiagraph is not a picture of the object or substance itself, but of the shadow merely which is cast by such object or substance, and the evidence discloses that the picture thus produced is frequently inaccurate and misleading owing to divergence and distortion. It is easily within the ability of a person operating an X-ray machine to magnify or minimize the appearance of an existing condition."

and assumes that the court was there announcing a proposition of law, and complains that the trial court would not observe it as such. The error of assuming that a court, charged with the duty of passing on the facts of a case, is laying down a proposition of law in stating its opinion as to such facts has been too many times pointed out by the Supreme and Appellate Courts to require citation of authorities. In this connection we may note that appellant's sixth instruction offered asked the court to inform the jury "that the X-ray skiagraphs of the plaintiff's injured arm introduced in evidence in this case are by no means conclusive as to conditions actually existing in his arm,"

and the court modified the instruction so it would read that they ''are not conclusive as to the conditions actually existing in his arm.'' This modification was made by erasures and interlineations, and the original instruction is certified here for our inspection, appellant claiming that it might have been misread by the jury to mean that the pictures in the case were conclusive as to the conditions actually existing, and that the instruction should have been given as offered. It should have been refused for the reasons above stated, and while the practice of modifying instructions by erasures and interlineations has been criticised by reviewing courts, it resulted in no harm here. The jury heard the instruction read as it appears in the record. We do not think they were misled by its inspection afterwards. The result was that appellant induced the court to convert a proposition of fact into one of law in its favor, and is in no position to here complain. So far as this record shows it was indisputably a fact, and no harm resulted to either party.

Under the Workmen's Compensation Act, sec. 3 [Cal. Ill. St. Supp. 1916, ¶ 5475 (3)], appellant was deprived of three defenses that might have been available at common law: First, that the employee assumed the risk of the employment; second, that the injury or death was caused in whole or in part by the negligence of a fellow-servant; third, that the injury or death was proximately caused by the contributory negligence of the employee. Appellant recognizes those provisions of that statute and correctly says that nevertheless negligence of the defendant must be averred and proven. Its counsel argues at length that the court did not so hold the law, and calls our attention to the instructions given and refused to support that argument. Appellant's first given instruction read as follows:

''The court further instructs you that before you

can find the defendant guilty, the plaintiff must prove by a preponderance of the evidence in this case that the defendant at the time of the accident did not furnish a reasonably safe platform on which the plaintiff was working, and did not use all reasonable precautions to keep and maintain such place in a reasonably safe condition, or did not furnish reasonably safe appliances, tools or equipments for moving the machinery which plaintiff was moving.''

This not only informed the jury that appellant must be shown negligent in failing to furnish a safe platform or safe appliances, but withdrew absolutely from the jury the other allegations of negligence contained in the declaration in respect to employing fellow-servants that were unskilled and unqualified. It seems a complete answer to the argument that appellee obtained an unfair advantage from a mistaken view of the law entertained by the court. It put the whole question of appellant's negligence in a nutshell, and stated it more favorably to appellant than the law required.

The court at the instance of appellee instructed the jury that the plaintiff did not assume the risk incident to his employment with the defendant. Counsel argues that this was equivalent to telling the jury that it was not necessary to prove defendant's negligence, and undertakes to point out that there is a plain distinction between the proposition that the defendant is deprived of the defense of assumed risk, and that the plaintiff is not to be held as assuming the risk. We conclude that the jury could not have been misled by that statement of law, even if a technical difference might be discovered by jurists.

The court refused appellant's fourth instruction, which was framed to tell the jury that the master must be shown negligent in some act or omission that caused the injury, and that a verdict must be based upon some logical and reasonable theory; and its fifth instruction

to inform the jury that the defendant must be shown to have failed to perform a duty which it owed the plaintiff. So far as either of these instructions was material it was covered by the given instruction above mentioned, and was less favorable to appellant than that. Defendant's sixth instruction was to inform the jury that if they found the negligence or carelessness of the plaintiff contributed to the accident they might consider that in arriving at the amount of damages to be assessed the defendant, and make it less than they otherwise would have made it but for said negligence of said plaintiff. The Workmen's Compensation Act of 1911-12 (J. & A. ¶ 5449) provided for proportioning damages in cases of contributory negligence of the plaintiff. We find no such provision in the Act of 1913, and know of no authority for applying that rule in the absence of such statutory provision.

The plaintiff called the two Greeks that were working with him as witnesses. They had not sufficient understanding of the English language so that their testimony was intelligible. The reporter stated that he could not understand the witness, and appellant's attorney said he did not care to cross-examine him, but objected to the testimony of those witnesses without its appearing in the record. The court said to plaintiff's attorney that if he wanted the testimony preserved he had better call an interpreter because the court did not think the reporter or jury understood what they said, and the court did not. Plaintiff's attorney then said that he offered the witnesses for the purpose of permitting the jury to ascertain their knowledge and lack of knowledge of the English language; whereupon the court instructed the jury not to consider the testimony of those witnesses and the plaintiff excepted. We see no error in this proceeding. The court seems to have followed the suggestion of appellant's counsel against the protest of appellee.

If the production of those witnesses had an influence with the jury in determining the question whether appellant had employed incompetent help, appellant caused the court to remove that trouble by taking that issue from the jury by the defendant's instruction before mentioned. The question of defendant's negligence was properly left to the jury. We do not think their conclusion so unreasonable or manifestly against the weight of the evidence as to justify our reversing the judgment on that ground.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*