Irene Habenstreit, Appellee, v. City of Belleville, Appellant.

Opinion filed November 8, 1939.

L. N. NICK PERRIN, JR., of Belleville, for appellant.

LINDAUER & LINDAUER, of Belleville, for appellee; SAM S. PESSIN, of counsel.

MR. JUSTICE DADY delivered the opinion of the court.

Irene Habenstreit, herein referred to as plaintiff, brought this action in the circuit court of St. Clair county against the city of Belleville, herein referred to as defendant, for personal injuries. The trial court entered judgment in her favor for $1,500 on a verdict of the jury. The city brings this appeal.

The defendant does not contend it was not negligent but urges that under the evidence in this case the plaintiff was guilty of contributory negligence as a matter of law. We will state only the facts material to such issue. The accident occurred on December 29, 1937, about one o'clock a. m., on South First street, hereinafter referred to as "First street," in said city. First street runs in a northerly and southerly direction, and intersects Adams street which runs easterly and westerly. Just south of Adams street 11 tracks of the Illinois Central Railroad run in a northwesterly and

southeasterly direction across First street, and occupy a space of about 350 feet.  In 1926 that part of First street covered by the railroad right of way was vacated and abandoned.  North of the railroad tracks First street was paved with brick, the south end of the pavement being 59 feet north of the most northerly rail of the railroad tracks.  The space between such rail and the south end of the pavement was covered with a mixture of crushed stone, chat and cinders.  Part of this 59 feet was used for traffic in that there was thereon a "Y" shaped drive, one branch of which led in an easterly direction to private property and the other branch in a westerly direction to private property.  The northerly rail of the most northerly railroad track was about two feet higher than the southerly end of the brick pavement, the rails of such track being about six inches high.  Dirt had been washed up against the most northerly rail flush with the top of the rail.  There was no driveway across that part of First street so vacated and occupied by railroad tracks, and there was no fill between the rails of such tracks.  There was no barricade of any kind and no sign indicating that First street north of the tracks ended where it did.  South of the railroad tracks First street continued southerly in a straight line, on the same line as that part north of the tracks.  There was a street light at the northwest corner of First and Adams streets, about 102 feet north of the northerly rail of the railroad tracks, and there was a street light on First street about 75 feet south of the railroad right of way, which last light was directly south of the first light.

The only eyewitnesses who testified were the plaintiff and her husband.  They lived in another part of the city, and the husband testified he had "never traveled that roadway before."  Plaintiff was not asked and did not testify concerning such subject.  On the night in question, in an auto driven by the husband, plaintiff and her husband entered First street several blocks

north of Adams street, drove south on First street, and paid a social visit at the Wolter home on the east side of First street. In doing so they parked their auto on the west side of First street, headed south, about a block north of Adams street. They arrived at the Wolter home about 10 o'clock p. m. and left there about 1 o'clock a. m. The night was foggy, somewhat hazy. The husband testified that he saw a light on the north side of the track and another light immediately south of the track; that while so driving at a speed of about 20 or 25 miles an hour he drove straight south and struck a rail or rails. It was not disputed that plaintiff was injured by the jolting of the car. Plaintiff testified that the auto lights were "dim"; that she was watching the roadway and did not say anything to her husband about the way he was driving. On cross-examination she was asked, "Did you see those railroad tracks before you got to them?" and her only answer was, "I saw it was a crossing, yes."

Ordinarily the question of whether or not a plaintiff was in the exercise of reasonable care for his or her own safety at and immediately prior to receiving an injury, is a question of fact for the jury. (*Devine v. Pfaelzer,* 277 Ill. 255.) The law does not charge one with anticipating dangers and negligent conditions, but he may assume that others have done their duty to give proper warning of hidden dangers. (*Pollard v. Broadway Cent. Hotel Corp.,* 353 Ill. 312.) It is the duty of a passenger in a vehicle, where he has an opportunity to learn of danger and to avoid it, to warn the driver of such approaching danger, and he has no right, because some one else is driving, to omit reasonable and prudent efforts on his own part to avoid danger, but where there is any evidence before the jury which taken with its reasonable inferences in its aspect most favorable to plaintiff, tends to show the use of due care, the question of due care is one for the jury. (*Dee v. City of Peru,* 343 Ill. 36.)

We cannot say as a matter of law that the rate of speed was unreasonable. The night was somewhat foggy and there was no warning whatever of the danger. There was ample evidence to justify the jury in believing that the plaintiff and her husband could reasonably assume and reasonably believe that this was an ordinary crossing over railroad tracks in a city and that they could safely drive across such tracks. We cannot say that the jury was not justified in finding that the plaintiff was exercising reasonable care for her own safety.

The *Dee* case, *supra,* and other cases cited by the defendant do not state any rules of law in conflict with those already stated. In the *Dee* case the accident happened in broad daylight, the view was unobstructed and the driver drove through a closed gate that could be seen for a distance of at least 110 feet. The case of *Greenwald v. Baltimore & O. R. Co.,* 332 Ill. 627, and other railroad cases are cited by the defendant. In each of those cases the injured party was struck by a train. The statement in those cases that railroad crossings are dangerous places and one crossing the same must approach the track with the amount of care commensurate with the known danger was not meant to be and was not an expression of opinion by the court that such a crossing is as a matter of law a dangerous place because of the physical condition of the crossing itself, but merely, as we view it, that such crossings are dangerous because of the possibility or probability of approaching trains.

The defendant contends ''there is no testimony in the record except a statement of the plaintiff that the hospital bill is reasonable,'' and that there is ''no proof in the record that the doctor who testified as to the reasonableness of the charges made by St. Louis physicians is qualified to testify as to these charges.'' Neither the abstract nor the record shows that any objection was made to the hospital bill or to the doctor

testifying on the ground that it was not shown he was not qualified to give an opinion as to the reasonableness of such charges. In the absence of such objection, the defendant cannot now complain.

No claim is made that the verdict was excessive.

The judgment of the circuit court is affirmed.

*Affirmed.*