William H. Handley, As Administrator of Estate of Howard J. Handley, Deceased, Appellee, v. George Erb, Appellant.

Gen. No. 9,635.

Heard in this court at the February term, 1941. Opinion filed July 9, 1941. Supplemental opinion filed and rehearing denied February 4, 1942.

SEARS, O'BRIEN & STREIT, of Aurora, and SNAPP, HEISE & SNAPP, of Joliet, for appellant; BARNABAS F. SEARS, of Aurora, CHARLES F. SHORT, JR., of Bloomington, and WILLIAM M. GARVEY, of Lockport, of counsel.

FRANK J. JONES, of Joliet, for appellee.

Mr. Justice Dove delivered the opinion of the court.

Appellee brought suit in the circuit court of Will county against appellant and the city of Joliet to recover for the wrongful death of appellee's intestate. A jury returned a verdict for $3,000 against both defendants. Under a reserved ruling on a prior motion by the city for a directed verdict in its favor the court granted the motion, and pursuant to a stipulation between appellee and the city, the suit was dismissed as to the latter. Judgment on the verdict was entered against appellant, from which he appeals.

The action arose out of a fatal accidental injury at about nine o'clock A. M. on November 12, 1934, to appellee's intestate at the intersection of Cass street with the east side of Ottawa street in the business district of the city of Joliet. Preparatory to a parade in celebration of Armistice Day, the city placed a new three-quarter inch rope across Cass street, tied about five feet high between poles located at the corners of the intersection on the east side of Ottawa street. The rope was fairly tight but sagged slightly and at the center was four or four and one-half feet above the street surface. Three red flags, one at the center of Cass street, and one in each of the east and west traffic lanes were tied on the rope. The center flag was about sixteen inches wide by twenty-two inches long. The other flags were about sixteen inches square. At least one of them had the word "Danger" on it in white letters. A like rope barricade was placed across Cass street at the east end of the particular block. The purpose of the barriers was to exclude traffic from the block on account of a customary annual distribution of gifts after the parade, to ex-service men and school bands, by a store located on the north side of Cass street next to the alley midway of the block. There were no other barriers in the downtown district.

Appellee's intestate was a Western Union messenger, twenty-two years of age. At the time of the

accident he had ridden his bicycle out of the alley on the south side of Cass street to a point near the northeast corner of the intersection, where he stopped east of the rope near the north curb of Cass street and placed one foot on the pavement. Erb, who was driving south on Ottawa street in a 1931 8-cylinder Nash car, made an inside left turn into Cass street. His car caught the rope, which slid over the hood and broke near the pole on the north side of Cass street. The longer part of the rope caught Handley around the neck, lifted him six or eight feet in the air, and threw him about ten to fifteen feet, where he struck the pavement and rolled over two or three times to a point near the center of Cass street. He died about an hour later from a resultant skull fracture.

Appellant testified it was a bright day and the pavement was dry; that as he came to the intersection he saw the green light was on; that he noticed a car in the distance coming from the south but it had not reached the intersection; that he was watching it so as to turn clear; that as he reached for the brakes, he saw Handley coming west on his bicycle and kept his eye on the boy and the other car; that he saw the boy stop and put his foot on the brake; that the boy was east of the rope; that there were no pedestrians on the crosswalk and he accelerated the car as he made the turn. He estimated his speed at about twelve miles per hour. A witness for appellee placed the speed at not to exceed fifteen miles per hour, and testified the car from the south and appellant's car each made an inside left turn at the same time, and there was no appreciable change in Erb's speed from the time he entered the intersection until his car struck the rope.

Erb testified his brakes were serviceable, having been repaired thirty or forty days previously. An expert brake tester testified that such a car travelling twelve miles per hour could be stopped within ten feet. The testimony as to how far the car travelled

after the rope broke is in conflict. Some of the witnesses testified it went about half a block, and others that it went about half that distance. Appellant testified he did not see the rope or any of the flags until he was about six or eight feet from them, and thought he applied his brakes because he came to a stop; that the rope gave somewhat and then broke; and that he never saw the north flag. Two witnesses testified they saw the barrier at about half a block distance, and another that he saw it from the northwest corner of the intersection.

Over appellant's objection, a witness for the city testified that in performing an experiment on the day prior to his testimony he caused three similar flags to be placed where the danger flags were located at the time of the accident. The experiment was performed about six years later. The only evidence as to conditions at or near the intersection was his testimony that the buildings on the four corners were the same. Appellant objected to his testifying in the presence of the jury "until the court determines whether in the examination you can't or can reconstruct the scene six years later." After a colloquy in chambers, and without any further testimony tending to show whether the conditions were the same, the court permitted the witness to testify he travelled the route at about 1:30 o'clock P. M., and saw the flags at points respectively 78.8 feet, 72.5 feet and 60 feet north of the north side of Cass street. He further testified his purpose in making the experiment was to see the flags at the first opportunity. The court denied appellant's motion to strike the testimony and stated to the jury that it was not admitted for the purpose of attempting to show negligence on the part of appellant, but solely for the purpose of attempting to show no neglect on the part of the city.

It is to be remembered the accident happened on a clear day about 9:00 o'clock A. M., while the experiment was performed at about 1:30 P. M. The sun,

as affecting clear vision of one making a turn to the east on the day of the accident presented a condition that was not there when the experiment was made. No showing was made as to whether there were any signs or other obstructions on the east side of Ottawa street which might obstruct the view around the corner. Appellee claims appellant made no objection that conditions were not shown to be the same, but the objection to the testimony, and the motion to strike it on the same ground, refute that contention. It is well settled in this State that results of an experiment are incompetent as evidence unless the essential conditions of the experiment are shown to be the same as those existing at the time of the accident. (*Smith v. Stover Mfg. Co.,* 205 Ill. App. 169; *Chicago City Ry. Co. v. Brecher,* 112 Ill. App. 106.) The same doctrine has been applied to photographs offered in evidence. (*Chicago & Eastern Illinois R. Co. v. Crose,* 214 Ill. 602.) The testimony permitted the jury to infer that if the witness, who knew the flags were there and was specifically looking for them, saw them at the points mentioned, that then appellant, who had no knowledge of the barrier, could have seen the flags from the same points, regardless of whether there were other conditions that might have obstructed his view. The court's statement to the jury as to the purpose of the testimony would not erase that inference from their minds. The testimony was highly prejudicial to appellant and was improperly admitted.

Cass street at this point is a State highway under the control and jurisdiction of the Department of Public Works and Buildings. Appellant contends the court erred in refusing to admit testimony that the city erected the barrier without permission from the Department, in violation of the Motor Vehicle Act as then in force, and cites *Pollard v. Broadway Cent. Hotel Corp.,* 353 Ill. 312; *Habenstreit v. City of Belle-*

*ville,* 302 Ill. App. 383; and other decisions. His counsel argue that he had the right to assume the law would be observed and that no barrier would be erected in violation thereof, and that the violation of the statute constituted a prima facie case of negligence on the part of the city. Appellant did not offer to prove the Department would not have permitted the barrier without requiring additional warning signs and so far as this record shows, the Department might have permitted the erection of the barrier in the exact manner it was erected here. Just what difference permission would have made in such a case is not pointed out. Such permission, without a requirement of additional warning, could not have made the barrier visible any sooner or more plainly to appellant or anyone else. The court did not err in refusing to admit the testimony.

A peremptory instruction told the jury that if they believed from the evidence that appellant saw or by the exercise of reasonable care could have seen the rope barrier and by the exercise of reasonable care could have had his automobile under such control as would enable him to avoid collision with the rope barrier, and failed to use reasonable care to have his automobile under such control, and by reason of such failure, if any, his automobile collided with the rope barrier causing the injury and death, and that Handley, nor his next of kin were guilty of any negligence contributing thereto, appellant would be liable. It is urged as a ground for reversal that the instruction singles out and gives undue prominence to the rope and omits other important facts, such as the car from the south. The instruction does not single out the rope, but on the contrary embraces the elements of appellant's alleged negligence in controlling his car and the want of any negligence on the part of the decedent or his next of kin. The instruction applied

the law to the facts in the case as the evidence on the part of appellee tended to prove them. It was properly given (*Carlin v. Grand Trunk Western Ry. Co.*, 243 Ill. 64.)

During the argument of appellant's counsel to the jury, the court, upon objection of the city, refused to permit him to read from the complaint allegations that the city negligently and carelessly erected the barricade so that it could not be seen or observed by persons lawfully in and upon the highway in time to avoid striking it. It is not error to refuse to permit counsel to read from the pleadings to the jury. (*Locander v. Joliet & Eastern Traction Co.*, 225 Ill. App. 143.) In *Bennett v. Auditorium Bldg. Corp.*, 299 Ill. App. 139, relied upon by appellant, it was held error to refuse to permit counsel to read from an original complaint a statement at variance with the theory of the amended complaint, but no such situation is present here. The complaint is in three counts. The allegation appears in the first count, which charges negligence of both defendants; and in the third count where the alleged negligence of the city is charged to be the sole cause of the accident. It does not appear in the second count, which is against appellant alone, based solely on his alleged negligence and carelessness in the control of his car. This is the customary method of pleading in order to cover whichever charge is sustained by the testimony. In the absence of a motion to require an election as to which count the plaintiff will rely upon, such allegations do not prevent a recovery under either count. The case cited by appellant is not applicable here, and to have permitted the reading of the allegation to the jury might have confused them. The court did not err in refusing to permit it to be done. Furthermore, the record shows appellant's counsel had already read to the jury from the complaint, and even if it had been proper for him to do so in the first instance, the court was not without discretion to refuse to permit its repetition.

Prior to the examination of the jurors upon their *voir dire* appellee's counsel filed an affidavit that Erb was insured in and his defense was being conducted by the Union Auto Indemnity Association of Bloomington, Illinois; that the insurance company had agents, representatives, solicitors, numerous policyholders and investigators in Will county, and that appellee desired to ask the jury the question whether any of them were employees, representatives, agents, solicitors, policyholders, or were interested financially or otherwise in the named insurance company. Appellant filed an affidavit by the secretary and general manager of the company showing none of the prospective jurors, naming each of them, were interested in or connected with the company in any of the modes mentioned, or otherwise, except that one of them, John Quigley, was a policyholder. He was eliminated by order of the court. Appellant's motion to require appellee to refrain from interrogating prospective jurors relative to any connection or affiliation with any insurance company, and particularly the named company was denied. A second motion to require appellee to so refrain unless the juror was first asked as to any employment, affiliation or connection with any corporation, company or association, and had answered that he was so connected, and was then asked as to the kind of corporation, company or association and had answered that it is one engaged in the insurance business. This motion was likewise overruled, and the court permitted appellee's counsel to ask the question of all the prospective jurors collectively, including those in the box and the others in the courtroom.

Our Supreme Court and this court have often pointed out the viciousness of bringing to the attention of jurors the fact that an insurance company is defending a suit for any other purpose than that of enabling counsel to exercise his right of challenge on account of interest. (*Smithers v. Henriquez*, 368 Ill. 588; *Mithen v. Jeffery*, 259 Ill. 372; *Clark v. Hassel-*

*quist,* 304 Ill. App. 41.) It was pointed out in the *Smithers* case and in the *Mithen* case that an examination of jurors could and should be conducted in such a manner as not to disclose the relation of an insurer. In the case at bar, after it was shown that none of the jurors had any interest in or connection with the insurer, there was no occasion for permitting the question to be asked. Not only is that true, but the motion which, if, allowed, would have brought any examination within the doctrine laid down in the *Smithers* case and the *Mithen* case was denied. The court said in the *Smithers* case that where such an inquiry is made in good faith and no prejudice results, a verdict will not be disturbed; that where the evidence shows a purpose to improperly inform the jury of the relation and the circumstances tend to show a prejudicial effect upon the jury it constitutes error for which the judgment will be reserved, but if it appears the jury were not actuated by passion and prejudice on that account the verdict will not be disturbed, and that it is manifest from all the cases on the subject that to require a reversal, the examination must be such as to show a prejudice to the rights of the defendant. We think the sole purpose of counsel in this case was to improperly inform the jury that the insurance company was defending the suit. Such conduct is manifestly prejudicial to the rights of the defendant.

In *Eldorado Coal & Coke Co. v. Swan,* 227 Ill. 586, the court said that such conduct is censurable in the highest degree, and if the verdict were such as to raise a suspicion on the minds of the court that the jury had been influenced by the misconduct, or if the case were a close one on the facts, the court would not hesitate to reverse the judgment for that reason alone.

While we cannot say that the verdict is so manifestly against the weight of the evidence as to require a reversal for that reason, we think that the case was a close one on the facts. What effect the prejudicial

misconduct had upon the jury it is impossible to tell. For the error in the admission of the testimony noticed above, and in bringing to the jury's attention, under the circumstances shown, the fact that the insurance company was interested in the suit, requires a reversal of this judgment.

The judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

SUPPLEMENTAL OPINION.

It is insisted by counsel for appellee, in his petition for rehearing, that the testimony of the city engineer as to measurements of distances, which were taken by him as the result of an experiment made by him the day before he testified, which was six years after the accident, was not offered by plaintiff, but by the City of Joliet, appellant's codefendant, therefore, appellee was not chargeable with the error of admitting this testimony. In support of this contention, counsel call our attention to *Schmidt v. Chicago City Ry. Co.*, 239 Ill. 494 and *Condon v. Chicago Ry. Co.*, 181 Ill. App. 330. We have examined both cases, but there is nothing said in either contrary to our holding in the instant case. In the *Schmidt* case, the plaintiff was a passenger on the car of the Chicago City Railway Company which was going south on Clark street in the City of Chicago. Twelfth street crossed Clark street at right angles, and the Union Traction Company was operating a car along its track on that street, and there was a collision at the intersection at which the plaintiff was injured. The court, in its opinion, said that there was no effort to controvert the right of the plaintiff to recover against one or the other of the defendants, and aside from the testimony relevant to the question of the amount of damages, the defense developed into a contest between the two defendants as to which one was guilty of the negligence which

caused the collision. Evidence on the part of the Union Traction Company tended to prove that the uniform custom with reference to the right of a car to pass over the crossing was that the car which got there first had the right of way. The defendant, Chicago City Railway Company contended that there was a rule and custom by which the cars of the Union Traction Company stopped on reaching Clark street, and if any car of the Chicago City Railway Company was within 150 or 200 feet of the crossing, that then the Twelfth street car would wait, until the Clark street car had passed over the crossing, and offered witnesses as to that rule and custom. Upon cross-examination, the court erroneously permitted counsel for the Union Traction Company to examine those witnesses with respect to how long it takes a car to run 200 feet, the rate of speed of the car upon which the plaintiff was riding, within what distance it could be stopped, and other matters of that kind. The court said that the cross-examination should have been limited to the facts elicited by the examination in chief, but that the cross-examination by counsel for the Union Traction Company could not be regarded as cross-examination by the plaintiff. The jury found the Union Traction Company not guilty, but returned a verdict in favor of plaintiff and against the other defendant. In its opinion, the court said that the fact that one party was improperly permitted to introduce testimony hostile to the other defendant, did not justify reversal as against the innocent plaintiff and held that the liability was not joint but several, and that if the evidence against the defendant found guilty, sustained such a judgment, that then, the question whether there was error in the rulings of the court between the two defendants does not concern the plaintiff. It will be noted that in the *Schmidt* case, the Union Traction Company introduced witnesses to contradict the incompetent testimony offered by the other defendant. If appellant, in

the instant case had done likewise, then, as in the *Schmidt* case, the controversy on the particular subject would have been between the defendants, but appellant here introduced no evidence on the subject and it was not incumbent upon him to combat incompetent testimony with other testimony. He had the right to insist that the testimony was incompetent and he did so. Appellee, Handley, had the right to show that the conditions were the same, either by cross-examination or by other testimony, if they were the same, but he was content and elected to let the record stand with the incompetent testimony therein. This, in effect, amounted to adopting that incompetent testimony as his own and he received the benefit thereof and is not now in a position to insist that this matter was merely a controversy between defendants in which he was not interested or by which he was affected. The incompetent evidence here is incompetent, for any purpose. Appellant objected to it, and it was over his objection that the testimony was admitted, and he is the person whom the testimony affected. We adhere to what we said in our original opinion with reference to the prejudicial character of this evidence.

In his petition for rehearing, counsel for appellee further insist that what is said in the opinion to the effect that the trial court erred in permitting counsel for appellee, upon the examination of the jurors upon their *voir dire* to ask the jury whether any of them were employees, representatives, agents, solicitors, policyholders or interested financially or otherwise in the Union Auto Indemnity Association of Bloomington, is not in accord with the ruling of the Supreme Court in *Smithers v. Henriquez,* 368 Ill. 588.

In the recent case of *Edwards v. Hill-Thomas Lime & Cement Co.,* 378 Ill. 180, being an appeal from the city court of East St. Louis, it appeared that counsel for the plaintiff made an oral request of the trial judge in chambers for permission to propound to the jurors

on their *voir dire* a somewhat similar question with reference to the Massachusetts Bonding and Insurance Company which had the coverage and was handling the defense of that case. The reasons assigned by counsel were that said company was liable for any judgment that might be rendered against the defendant, and that he desired to ask the question for the purpose of exercising his right of challenge. In response to this request, counsel for defendant stated under oath in substance that the Insurance Company was an "old line company"; that it had no officers or stockholders in East St. Louis, but did have soliciting agents there, none of whom were on the panel of jurors then in attendance upon the court; that while the company might have policyholders in East St. Louis, any judgment would not affect the policyholders because they were not liable for assessments to pay judgments. In its opinion, the court said: "While there is nothing in the record to show the request was not made in good faith, the record is equally barren of any fact which tends to show that it was so made. The grounds stated by counsel as reasons for asking the questions were wholly insufficient. Likewise, the facts stated by counsel for appellant, under oath, for the purpose of obviating the supposed necessity for the questions, were insufficient for that purpose, if the grounds upon which the request was made had been sufficient." The Court then cited *Smithers v. Henriquez, supra,* commented upon it and continued: "While the record in this case does not show that the request for leave to ask the questions in the examination of the jurors was not made in good faith, there was no basis shown upon which the request could reasonably be granted by the trial court. It is apparent under the showing made in this case that the real purpose which counsel had in mind was to advise the jury that the insurance company was making the defense and was liable for the payment of any judgment rendered."

*Smithers v. Henriquez, supra,* held that before permitting an inquiry to be made, such as was made in the instant case, it devolved upon the plaintiff to show, first, some grounds upon which to base a reasonable belief that it was necessary to interrogate jurors as to their financial interest, if any, in the defending insurance company, and second, that the application to do so was made in good faith. In the instant case, all that the application of the plaintiff disclosed was that the defending company did have agents, representatives, solicitors, numerous policyholders and investigators in Will county. It does not follow from this fact alone that it was necessary to interrogate jurors as to their interest, financial or otherwise, in the defending insurance company or that the application was made in good faith. In *Edwards v. Hill-Thomas Lime & Cement Co., supra,* the court stated that under the showing made, the real purpose which counsel for the plaintiff had in mind was to advise the jury that the insurance company was making the defense and was liable for any judgment rendered. So, in the instant case, the conclusion is inescapable that the sole purpose of counsel was to improperly inform the jury that the insurance company was defending this suit. The petition for rehearing will therefore be denied.

*Rehearing denied.*