**Chicago Daily News Employes' Credit Union, a Corporation, Appellant, v. Charles Reed, Appellee.**

Gen. No. 48,907.

First District, Second Division.

June 12, 1963.

Bell, Boyd, Lloyd, Haddad & Burns, of Chicago (Thomas R. McMillen and Francis J. Higgins, of counsel), for appellant. No brief filed by appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Plaintiff, Chicago Daily News Employes' Credit Union, brought this action in the Municipal Court of Chicago to recover the proceeds of certain loans made to defendant and not repaid. At the time of suit the Credit Union was in the process of liquidation. The action was commenced under the provisions of the statutes permitting suit to be brought by decision of a credit union's liquidating committee, in the corporate name.

In its amended statement of claim, plaintiff sought judgment in the sum of $4,259, plus interest from September 25, 1959, the date of the last payment. Defendant filed a defense denying the indebtedness and also filed a counterclaim seeking judgment for an alleged overpayment by defendant of $2,500 plus interest.

A six-man jury returned a verdict for defendant on the amended statement of claim. The jury also found for defendant on defendant's counterclaim but without an assessment of damages. The court entered judgment for defendant on plaintiff's amended statement of claim, and also dismissed defendant's counterclaim. Plaintiff's post-trial motion for a new trial was denied, and plaintiff then prosecuted the present appeal. Defendant has not filed a brief on appeal.

It is conceded that during the period 1952–1959 the defendant obtained loans from the Credit Union and

that he made payments from time to time on his indebtedness. The plaintiff offered documentary evidence of three kinds in substantiation of its claim: the Credit Union's account ledgers for the Reed account, the Credit Union's check ledgers, and the Credit Union's checks made payable to Reed. Nevertheless, there was confusion in the evidence as to the precise amount defendant owed the Credit Union. Edward Stange, formerly Secretary-Treasurer of the Credit Union, was found to have embezzled large sums of money from the organization. He attempted to cover these defalcations by making fictitious entries in the records of the Credit Union, including the individual account ledger of defendant, Charles Reed. It further appears that Stange forged Reed's signature on several checks made payable to Reed, which had been drawn on Credit Union funds. Defendant therefore entered a counterclaim for the amount of a number of checks bearing the purported signature of defendant. A handwriting expert called by plaintiff testified that the endorsements on some of these checks were forged, while most of them bore the genuine signature of defendant.

It is sufficient to indicate that although the condition of the records left doubt as to the exact amount Reed owed the Credit Union, there was nevertheless evidence from which a jury might properly infer that he did have an obligation in some amount. Plaintiff argues that the jury's verdict for defendant on the amended statement of claim is against the manifest weight of the evidence and that a new trial should be granted for this reason. We cannot accept this contention. The evidence of defendant's liability, while sufficient for the jury, is not so conclusive that a verdict for defendant should be set aside as against the manifest weight of the evidence. The same opinion applies to the issues presented by defendant's counterclaim. However, the jury's verdict in this case presents an anomaly which, when combined with oth-

er errors in the trial, makes it necessary for us to remand this case for a new trial.

As indicated, the six-man jury found for the defendant on both the amended statement of claim and the counterclaim, but without an assessment of damages on the counterclaim. Defendant's counterclaim was bottomed upon a claim of overpayment by Reed, evidenced by checks which, it is claimed, were never cashed by him although they bore his purported signature. Under no theory of the case can the jury's findings of zero on the claim and zero on the counterclaim be rationally explained. They are the patent result of compromise and of sympathy for the defendant engendered by the introduction of prejudicial evidence.

Plaintiff's witness Norman Walgren, former president of the Credit Union, was cross-examined at length and over plaintiff's objections as to matters bearing exclusively upon the wealth of the Credit Union and its ability to stand a loss without injury to its members. The most prejudicial testimony of this type was to the effect that Mr. Marshall Field had made a $50,000 contribution to the Credit Union in order that none of its members might be hurt through the loss of their deposits.

The impropriety of admitting this type of evidence is self-evident and the trial court abused its discretion in permitting its introduction. The jury could have concluded upon hearing this testimony as to Mr. Field's generosity only that plaintiff had suffered no loss at defendant's hands, since Mr. Field had agreed to make all plaintiff's members whole. In the present context, the admission of this evidence was tainted with the same transparent defect as the admission of evidence showing the insurance coverage of a party to litigation, a practice not permitted in our courts. Clark v. Hasselquist, 304 Ill App 41, 25 NE2d 900 (1940); Davidson v. Loomis, 282 Ill App 515 (1935). Evidence of this type not only had no

bearing upon the issues involved in the case but was calculated to prejudice the jury against the plaintiff at the very outset of the trial. It placed Mr. Field in the position of being plaintiff's insurer against any delinquency of Reed and tended to create the impression that the plaintiff had suffered no loss as the result of the defendant's failure to pay his debt.

█ In addition to cross-examining Mr. Walgren on the subject of the Field contribution, counsel for defendant was allowed, over plaintiff's objection, to question Mr. Walgren about the Credit Union's reserves for dividends, undivided profits, and bad debts. Defendant also elicited testimony from Walgren that the Credit Union's dividends had usually amounted to $35,000 or $40,000 per year. This entire line of inquiry, including the portion relating to Mr. Field's contribution, was designed to impress upon the jury the contrast between the corporate plaintiff's affluence and the moderate circumstances of the individual defendant. As such, the admission of this testimony constituted an abuse of discretion, for evidence relating to the wealth or poverty of a party is plainly inadmissible and beyond the scope of permissible cross-examination. Keehn v. Braubach, 307 Ill App 339, 30 NE2d 156 (1940); Handley v. Erb, 314 Ill App 207, 41 NE2d 222 (1941).

█ The court erred in instructing the jury, at defendant's request and over plaintiff's objection, that if a party to the case had failed to offer evidence within his power to produce, the jury might infer that the evidence would be adverse. During a conference to settle instructions, the court stated that it would give an instruction to this effect if the plaintiff failed to produce Edward Stange as a witness at the trial. Plaintiff stated its objection to any such instruction on the grounds that Stange, a penitentiary inmate, was equally available to both parties. Subsequently, however, plaintiff did subpoena Stange as

340

a rebuttal witness, thus removing his absence as a basis for an instruction of this kind. We have searched the record in vain for any other factor justifying the giving of the instruction, and have found no indication that either party failed to produce evidence within his power to produce. The necessary prerequisites for the giving of the instruction were simply not present. (See Mantonya v. Reilly, 184 Ill 183, 56 NE 425 (1900); Devine v. Chicago, R. I. & P. R. Co., 185 Ill App 488 (1914), affd 266 Ill 248, 107 NE 595 (1915).)

■ Finally, it was error for the court to instruct the jury at the close of the evidence that any verdict they reached must be unanimous, that in their deliberations they should examine the questions submitted with a proper regard and consideration for the opinions of each other, that they should listen to each other's arguments with an open mind, and that they should make every reasonable effort to reach a verdict. Such an instruction is appropriate only after the jury has deliberated for some time without reaching a verdict. The instruction in the form given by the judge is contained in Illinois Pattern Jury Instructions, § 1.05, p 13 (1961), but with the following comment:

> "This instruction should not be given as part of the original series but only if, after reasonable deliberation, the jury reports an inability to agree or fails to return a verdict. . . ."

In the instant case the trial judge gave the instruction before the jury retired. In view of the bizarre character of the jury's findings, it is extremely likely that this instruction, together with the other errors discussed, had the prejudicial effect of coercing a compromise verdict.

For the reasons indicated, the judgment entered by the court and its order denying plaintiff's motion for

341

a new trial are reversed, and the cause is remanded for a new trial.

Judgment and order reversed, and cause remanded for a new trial.

BRYANT, PJ and BURKE, J, concur.