Robert L. Westlund, Appellee, v. Kewanee Public Service Co., a Corporation (Illinois Power Company, an Illinois Corporation, Appellant).

Gen. No. 10,905.

Second District.

July 17, 1956.

Released for publication August 6, 1956.

Welch & Welch, of Kewanee, for appellant.

Gregg A. Young, of Kewanee, for appellee.

JUSTICE CROW delivered the opinion of the court.

The defendant, Illinois Power Company, successor to Kewanee Public Service Company, appeals from the verdict and judgment of $7,000 in favor of the plaintiff, Robert L. Westlund, in this action for personal injuries suffered in Kewanee. It is claimed by the defendant that (1) the plaintiff was on the day of the injury, October 6, 1947, an employee of the defendant and not an independent contractor, and by reason thereof and the provisions of the Workmen's Compensation Act (Ch. 48, Ill. Rev. Stats., 1947, Par. 143), his common law right of action against the defendant employer had been abolished, and, hence, the court should have allowed and not denied its motion, based on that point, to direct a verdict of not guilty at the close of all the evidence; and (2) the trial court erred in the giving and refusal of certain instructions. The defendant's motion for judgment notwithstanding the verdict, based also on the same point as its motion for a directed verdict, and its motion for a new trial, which raises, among other things, the questions as to the instructions, were also denied. A special interrogatory was submitted by the defendant and given to the jury, asking: "Do you find from the preponderance of the evidence that the plaintiff, Robert Westlund, was an employee of the Kewanee Public Service Company at

13

the time of the occurrence in question?" The answer of the jury was: "No." The defendant did not object in the trial court to the finding on that special interrogatory either in its motion for judgment notwithstanding the verdict, or its motion for new trial, or by motion to set aside the special finding, or otherwise. The special finding was consistent with and supported the general verdict.

The amended complaint, as amended, so far as material, alleged that the defendant was a public utility, engaged in constructing a gas main under ground on October 6, 1947; prior to that date the defendant, by its agent, entered into an oral contract with the plaintiff by which he was to weld the joints in the pipe line; the plaintiff was to furnish all the welding equipment and do the welding work, and the defendant was to pay an overall charge of $5.50 an hour for the services of plaintiff and his equipment; while the plaintiff was in the ditch, welding, the supports holding the pipe already welded gave way when the welded sections of pipe were being lowered into the ditch; and the falling pipe hit the plaintiff on the head, injuring him. The negligence charged was that the defendant's servants selected improper wooden timbers for supports, there was an insufficient number of supports, and the defendant's servants were negligent in lowering the welded sections into the ditch. The defendant's answer and additional defense, so far as presently material, denied some of the alleged features of the oral contract, denied negligence, alleged the plaintiff was an employee of the defendant and his cause of action was abolished, and alleged the plaintiff assumed the risk involved. Other pleadings of the parties need not now be noted.

There is little dispute as to the facts. The plaintiff was on, and for some time before October 6, 1947, had been a welder by trade, had a welding shop at his home, and had a portable welding machine, which could be

14

pulled by a jeep, so as to permit welding work at the scene of a job, as well as at his home. The plaintiff did general job welding, structural welding, ornamental iron work, and farm repair welding, serving the general public as they came to him. Several weeks prior to October 6, 1947, Arthur Jenkins, the gas superintendent of the defendant, came to the plaintiff's shop, told him the defendant was going to build a gas pipe line in a certain area of Kewanee, and would like him to do the welding. The plaintiff agreed. About a week before October 6, 1947, Jenkins called the plaintiff again to be sure he was going to do the work. There was no mention in their conversations as to what the plaintiff would be paid. The plaintiff expected to charge the customary rate for work of that nature, according to what materials and labor were required, and, with average material, $5.48 per hour was the rate. Jenkins was familiar with his methods of charging, and Jenkins testified they had no price agreement as to his rate of pay. Jenkins told him the job would last six or eight weeks. This job would terminate upon completion of the pipe line. This was the plaintiff's first job at welding a gas pipe line for the defendant, but he had previously done other small welding jobs for the defendant. On those other jobs he had sent a statement at the end of the month for the work done, and no deduction had been made from his compensation for social security or income withholding taxes.

On the day the plaintiff was injured he was near the corner of Dwight and Church Streets in Kewanee, pulling his portable welding machine with his jeep. He had helmet, gloves, electrodes, cables, work clothes, and gas and oil to run his machine,—equipment of the trade,—all of which were owned by the plaintiff, and none of which were owned or supplied by the defendant. The welding job was skilled work and required special tools, which the plaintiff supplied. Jenkins, the gas superintendent, with four other employees of

15

the company, and a ditch digging machine, with an operator thereof, were also there. The plaintiff employed none of those men. They all were employees of the defendant. After the ditch was dug some four feet deep and twenty inches wide for a certain distance, 2 x 4 wooden timbers were placed by defendant's employees across it and then 4 inch steel pipes in approximately 20 foot sections were rolled onto the timbers to be welded together and afterwards to be lowered into the ditch. Two and sometimes three timbers were used to hold each section. The plaintiff then got into the ditch with the necessary parts of his welding equipment, and proceeded to weld the various sections of pipe together. The defendant's employees placed the pipe in position preparatory to the welding; that act of the defendant's employees was necessary for the plaintiff to proceed with his welding work; and he assisted them in lining up the pipe. The defendant's employees (with occasional help of the plaintiff) clamped the several sections of pipe together, and then the plaintiff welded them.

It was his job to direct the welding. Jenkins inspected the welding, watched it very closely to start out with, and determined that it was satisfactory, and at one time, in the forenoon, Jenkins had suggested or asked the plaintiff to make a little heavier welds, which he did. The plaintiff had had no conversation with Jenkins with reference to welding the underside of the pipe, which was the particular operation he was performing when injured, but in order to weld the underside he had to get down into the ditch. It was impracticable to roll the pipe in order to weld the underside. The selection of the method of getting the weld on the bottom of the pipe was determined by the plaintiff.

The plaintiff did not punch a time clock on this job, or report to a timekeeper; he was his own timekeeper. He started work when the defendant's employees had

the pipe lined up, and he would quit when he had finished the balance they had lined up, and had no more work for him to do. He had to keep the welding done so that that part of the job would not slow up the ditch digging machine, because that machine was operating ahead of the plaintiff's welding work, but he could take care of other business and was free to come and go as he pleased as long as it did not hold up the pipe line job. Mr. Jenkins was the boss of the whole project. He set the general hours of work.

The defendant's employees and Jenkins, the superintendent, at the particular time in question were in the act of letting down by ropes some pipe lengths that had been welded, and pulling out the supporting 2 x 4's, at the northerly end of the ditch, about 400 feet north of where the plaintiff was welding, when they dropped a pipe length, the force and weight of which and of the other connected sections snapped the supporting timbers to the south, resulting in a length of pipe which the plaintiff was welding on at the time, at a point some 400 feet southwardly in the ditch, hitting him on the side of the head, causing a fracture.

After he sustained his injuries, the plaintiff billed the defendant for services, as far as he had gone, at the rate of $5.48 per hour for 7 hours, $38.36, the statement reading that it was from "Bob's Welding Service," and he was paid, and apparently no deductions were made from his compensation for social security or income withholding taxes. The plaintiff had planned to bill the defendant for his services at the completion of the job, rather than to be paid each day or week.

■■ A party is conclusively bound by a special finding of fact by a jury in answer to a special interrogatory submitted by him, unless specific objection thereto is made in or the question is raised in the trial court in the party's motion for new trial or motion to set aside the special finding of fact; the question is not preserved by the party's motion to direct a verdict,

17

or by a general objection in his motion for new trial that the verdict is contrary to the manifest weight of the evidence; a special finding in and of itself, if properly objected to, is no more binding upon the party than is the general verdict, and he is entitled to question the correctness of the special finding upon a motion for new trial or motion to set aside the special finding, but the objection to a special finding in order to be effective must be specific, and a general objection in a motion for new trial that the verdict is contrary to the manifest weight of the evidence is not sufficient for that purpose: Brimie v. Belden Mfg. Co. (1919) 287 Ill. 11; Brant v. Chicago and Alton R. R. Co. (1920) 294 Ill. 606; Taake v. Eichhorst (1931) 344 Ill. 508; Rubottom v. Crane Co. (1939) 302 Ill. App. 58; Weinrob v. Heintz (1952) 346 Ill. App. 30. Other cases to the same effect are: Voigt v. Anglo-American Provision Co. (1903) 202 Ill. 462; Hartley v. Red Ball Transit Co. (1931) 344 Ill. 534; Avery v. Moore (1890) 133 Ill. 74; Empire Laundry Mach. Co. v. Brady (1896) 164 Ill. 58; Pennsylvania Coal Co. v. Kelly (1895) 156 Ill. 9. Ch. 110, Ill. Rev. Stats., 1953, par. 192, being section 68 of the Civil Practice Act in effect when this case was tried, provided in part:

". . . and if either party may wish to move for a new trial or in arrest of judgment, or for a judgment notwithstanding the verdict, he shall . . . file the points in writing, particularly specifying the grounds of such motion, . . ."

The defendant made no specific objection in the trial court to the special finding of fact by the jury, in answer to the defendant's special interrogatory, that the plaintiff was not an employee of the defendant; it raised no question as to such in its motion for new trial; it made no motion to set aside the special finding of fact; its general motions to direct a verdict did not preserve the question; the general objection in its mo-

tion for new trial that the verdict is contrary to the manifest weight of the evidence did not preserve the question; its motion for judgment notwithstanding the verdict does not at all refer to the special finding of fact; and its points in writing filed as its motion for new trial or for judgment notwithstanding the verdict do not particularly specify such special finding of fact and any objection thereto as a grounds of such motions. Accordingly, the defendant is conclusively bound by the special finding of fact by the jury on the special interrogatory that the plaintiff was not an employee of the defendant. That finding being unquestioned and it being substantially decisive of the essential facts upon which liability depends so far as this appeal is concerned, there could be no error in denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

■ But even if the defendant were not conclusively bound, under the circumstances, by the special finding of fact on the special interrogatory, we believe this case was properly submitted to the jury to determine whether the plaintiff was an employee of the defendant or an independent contractor. Although the facts and circumstances as to the relationship are virtually undisputed, they are not necessarily susceptible of a single reasonable inference, and, therefore, that question was not one only of law for the Court, but was a fact question for the jury, under proper instructions, and their verdict and answer to the special interrogatory indicates they have found he was not an employee, but was an independent contractor. There is substantial competent evidence to support that finding,—it is not an unreasonable inference from the evidence,—and it is not contrary to the manifest weight of the evidence.

■ It is impossible or impracticable to lay down a hard and fast general rule by which the status of

men working and contracting together can definitely be defined in all cases as employees or independent contractors; each case must depend on its own particular facts and circumstances; no one feature of the relationship is determinative, but all must be considered and construed together; the right to control the details, manner, and method by which the work is to be done is probably the principal consideration; if the person for whom the work is done retains such right to control the details, manner, and method, the relation of employer-employee ordinarily exists; an independent contractor is one who renders service in the course of an occupation, who undertakes to produce a given result or to do a specific piece of work or job for another party, but is not subject to the orders or control of the latter in respect to the details of the work, the details or methods being left to his discretion, and he representing the will of the person for whom the work is done only as to the results and not as to the means by which the job is accomplished; the manner of payment, whether by the piece, job, day, or hour, the right to discharge, the skill required, the furnishing of materials, equipment, and tools, are all of some significance, but no one circumstance is necessarily controlling; whether the party performing the service is engaged in a business apart from the regular business of the person for whom the work is done, and whether the work done is a part of the regular business of the person for whom it is done or is only incidental to his main business, are also factors; if the facts are undisputed, and the problem concerns the legal status to be inferred from them, and the facts permit more than one reasonable inference, there is a question of fact and the trier of the facts may draw the inference, and its decision as to the preponderance or greater weight of the evidence will ordinarily not be disturbed on review; only when the undisputed facts are suscep-

20

tible of but a single reasonable inference does the issue become one only of law.

Those principles are established by the following cases, among the many that might be referred to: Henn v. Industrial Commission (1954) 3 Ill.2d 325 (carpenter engaged to repair garage door, obtain the materials, furnish his own tools and equipment, under no specific pay agreement, but he charging for other similar work so much an hour, the relationship to terminate at the conclusion of the particular job, is an independent contractor); Nelson Bros. and Co. v. Industrial Commission (1928) 330 Ill. 27 (owner of carpenter and jobbing shop engaged to saw lumber into pieces of a specified size, at his shop, with his tools, at an hourly rate for labor and use of his machine was an independent contractor); Besse v. Industrial Commission (1929) 336 Ill. 283 (plasterer engaged to repair a cistern and point a chimney, employing his own assistant, furnishing materials, using his own tools, the owner exercising no control over methods, was an independent contractor); Meredosia Levee & Drain. Dist. v. Industrial Commission (1918) 285 Ill. 68 (operator of dredging machine engaged to remove sand and dirt from drainage ditch for drainage district at so much per hour per ten hour day was an independent contractor, even though a district commissioner watched and inspected the work, told operator where to begin and end, how deep to dig, and where to deposit the sand and dirt, and could discharge the operator, but gave no directions as to how work should be done); Ferguson and Lange Foundry Co. v. Industrial Commission (1931) 346 Ill. 632 (party hauling dirt and cinders away from foundry premises, using his own horses and wagon, no particular hours being prescribed, he being free to haul for others, was an independent contractor, and that occasionally the foundry asked him to remove such from a particular

21

place before removing such from another place is inconsequential and did not constitute control over methods); Postal Tel. Sales Corp. v. Industrial Commission (1941) 377 Ill. 523 (salesman on a commission basis, working independently, hiring or firing sub-agents, with no directions as to how or to whom to sell, paying his own expenses, is an independent contractor); Olympic Commissary Co. v. Industrial Commission (1939) 371 Ill. 164 (a commissary company furnishing board and lodging to railway company employees is an independent contractor, though railway furnished cars, determined location of camp, furnished water, ice, fuel, and janitor service, and transportation, and could terminate contract upon notice,—the right of the railway to terminate the contract is not control over the methods by which the commissary company did its job); Ryan v. Associates Inv. Co. (1938) 297 Ill. App. 544 (garage operator who towed cars repossessed by finance company to temporary storage, who had independent garage business, towing for others, and doing general repair work, is an independent contractor). See also, in principle: Henry v. Industrial Commission (1952) 412 Ill. 279; Lawrence v. Industrial Commission (1945) 391 Ill. 80.

In the foregoing, we have referred to most of the cases cited by the defendant and of those only Henry v. Industrial Commission, supra, and Lawrence v. Industrial Commission, supra, held that the party doing the work was an employee rather than an independent contractor,—the first involving a carpenter, and the second, a plasterer. We need not here review in detail the facts of each case except to say they are materially different from those in the case at bar. The principles therein stated are as we've referred to above and those cases simply involved varying applications thereof. Of the defendant's remaining cases, Immaculate Conception Church v. Industrial Commission (1947) 395 Ill. 615, held that a master plumber was,

22

under the facts, an independent contractor; Sinclair Refining Co. v. Industrial Commission (1925) 317 Ill. 541 held that under the facts there involved a plumber was an employee, not an independent contractor; Central Illinois Light Co. v. Industrial Commission (1935) 359 Ill. 430 concerned a housemover, who was moving a boiler, and he was held to be an employee, though the point is but very briefly discussed; and Van Watermeullen v. Industrial Commission (1931) 343 Ill. 73 had to do with a trucker who was hauling loads from a railroad to a concrete mixer on a road construction job. None of those are at variance with our views here in principle and none are decisive of the present case.

There is here ample evidence from which the jury could draw the reasonable inference that the plaintiff was not an employee of the defendant, but was an independent contractor. Among such indicia of which there was evidence are: he was engaged in an independent welding occupation or business, serving the general public, quite apart from the regular utility business of the defendant. The welding work was not a part of the regular utility business of the defendant (although, of course, the whole pipe line was), but was only incidental thereto. The defendant did not generally control the details, manner, and method by which the welding work was to be done, and, particularly, the selection of the method of getting the weld on the bottom of the pipe (which the plaintiff was doing when injured) was determined by the plaintiff, not the defendant. He undertook to produce a given result, namely, weld the pipe, representing the will of the defendant only as to results and not as to the means by which the job was to be accomplished. The defendant's superintendent, though necessarily concerned with the whole project, including the results of the plaintiff's welding, evidently devoted his greater attention to the placing of the pipe in position preparatory to the welding and to the lowering of the pipe into the ditch after

23

it was welded, rather than to the welding as such, and at the time the plaintiff was injured the superintendent was about 400 feet away, up the line to the north, assisting in lowering the welded pipe into the ditch and the plaintiff was engaged by himself in welding the underside of the pipe by the method determined by him, without direction or control by the superintendent at all as to the details, methods, or manner thereof. His work required special skill and special tools. He furnished the materials, equipment, and tools to do the job. There was no specific agreement as to pay, his actual pay was on an hourly basis customary in the trade for such work when done for others, no deductions were made for social security or income withholding taxes as ordinarily would have been required as to an employee as such, he rendered a statement for his compensation, and the prior history of his pay procedures with the defendant on other jobs is indicative of an independent contractor relationship more than an employee relationship. The relationship would terminate at the conclusion of the job. He did not punch a time clock. He was free to come and go and care for other business as long as it did not hold up the pipe line project.

That there is some evidence from which possibly a different inference might have been drawn is not significant as long as there is a reasonable basis in substantial competent evidence to support the inference which was drawn. The facts that the defendant inspected the welding and once suggested or asked him to make a little heavier welds, which he did, do not necessarily establish a general control by the defendant of the details, manner, and method of the welding, —though such were proper facts to be argued by the defendant to the jury. They are equally or more susceptible of interpretation as merely a normal concern by the defendant with the result of the job, the result of which, of course, had to meet with its approval, and

a normal, business-like degree of cooperation and coördination between the plaintiff and defendant in accomplishing a job in which they both had a necessary part. That his contract was for no definite period and that he could be discharged any time by the defendant, if true, is of no particular significance and does not demonstrate control by the defendant of the details, manner, and method of the welding. That his pay was on an hourly basis was a proper factor, with other factors, for the defendant to argue to the jury, but is not decisive, and is consistent with either relationship.

The pleadings indicate that there was a prior proceeding before the Industrial Commission by the plaintiff against the defendant for workmen's compensation growing out of the same incident; the Commission found that the relationship of employer and employee did not exist, and that the plaintiff was, therefore, not entitled to workmen's compensation; on writ of certiorari to this same circuit court that court affirmed the Industrial Commission, and found that the relationship of employer and employee did not exist; and the Supreme Court denied the defendant's petition for a writ of error. Though the plaintiff does not specifically urge that that finding in that proceeding is conclusive in this tort suit, and we have not considered that possible question, that determination by the Commission, the circuit court, and the Supreme Court, is, at least, persuasive.

There was, accordingly, no error in denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

The defendant as a part of its answer filed an additional defense, setting out, among other things, that the defendant had paid the plaintiff for the injuries received the sum of $525.90, being for medical, nursing and hospital services, and for workmen's compensation for a period of partial disability, which sum, it was alleged, should be credited to the defendant as full

settlement of all damages, or in mitigation or reduction of damages which the defendant may or might be liable for, if any.

One of the plaintiff's instructions, No. 12, of a part of which the defendant complains, is a customary instruction as to tort damages, and the part objected to, being the concluding clause thereof, read: ". . . but the defendant shall be given credit *in the consideration of the question of damages* for the sum of $525.90 heretofore paid by the defendant to the plaintiff for medical, nursing, and hospital services, and otherwise." (Emphasis added.) There was evidence, in addition to the defendant's answer, of the payment of $345.50 of that $525.90 by the defendant to the plaintiff for the medical, nursing, and hospital services, the defendant making no objection to that evidence, though there was no evidence of the $180.40 balance of the $525.90 for so-called workmen's compensation.

The defendant says the fact that it had paid such sums should never have been divulged to the jury because such fact had no bearing on the question of liability, and was prejudicial. It also says the phraseology therein "medical, nursing, and hospital services, and *otherwise*" leaves an unexplained gap as to what a part of the $525.90 was for, inasmuch as only $345.50 was for medical, nursing, and hospital services.

██ ██ If the jury found the defendant liable for this alleged tort, the defendant was entitled to credit in mitigation against any damages otherwise due for the amount of its prior payment, the plaintiff was not entitled to a double recovery to the extent of that payment, and that is the reason for the instruction. According to the defendant, the allegations as to that payment of $525.90 were inserted in its answer in order to guarantee that the defendant would get credit for such on any judgment that may have been entered herein. Where a plaintiff receives a payment from one against whom tort liability could lie, such payment may

be deducted from the damages recoverable; evidence of such payment may be submitted, and an instruction may be given informing the jury of their right to consider such payment in determining damages, if they find for the plaintiff. Though the following cases involved covenants not to sue as against and payments to the plaintiff by one of multiple tort feasors, and hence are not exactly the present case, they may be referred to generally, and, in principle, are applicable: Aldridge v. Morris (1949) 337 Ill. App. 369; New York, C. & St. L. R. Co. v. American Transit Lines (1951) 408 Ill. 336; Hyde v. Montgomery Ward & Co. (1951) 343 Ill. App. 388. Also, cf. Burns v. Stouffer (1951) 344 Ill. App. 105; Stoewsand v. Checker Taxi Co. (1947) 331 Ill. App. 192; Curtis v. City of Chicago (1949) 339 Ill. App. 61. An instruction may, of course, be given as to a material admission in an answer: Bellomy v. Bruce (1939) 303 Ill. App. 349. The plaintiff not being, in legal contemplation, an employee of the defendant, the payment which the defendant so made was necessarily, in legal contemplation, not made pursuant to any contract obligation or in settlement of any workmen's compensation liability, but was voluntary in character and in a case in which the defendant's liability, in legal contemplation, is predicated in tort.

The fact of the payment being admitted, having been brought into the case in the first instance by the defendant's own pleading, and there being no controversy as to the fact, no evidence thereof was necessary. If the purpose of such allegation in the defendant's pleading was to guarantee it would get credit therefor on any judgment that might be entered herein,—and, indeed, we can perceive no other reason for the allegation,—then the objected to portion of the plaintiff's instruction No. 12 literally accomplishes exactly that purpose.

Such payment had no bearing on the question of liability; there is no contention by the plaintiff that it did

27

have; the plaintiff's instruction No. 12 is not an instruction bearing on liability, but only on damages in the event the defendant was otherwise found liable; the opening sentence thereof was: "You are instructed that *if you find for the plaintiff* you will be required to determine the amount of the plaintiff's damages"— (Emphasis added); neither that or any other instruction attempted to inform the jury that such payment had any bearing on the issue of liability; and there is nothing to indicate the jury were confused or misled thereby or obtained an erroneous impression that such bore on liability. In fact, the defendant's own given instruction No. 25 makes that very clear. That instruction read:

"If you find from the greater weight of the evidence, and under the instructions of the Court, that the plaintiff is entitled to recover, then you may consider the question of damages, if any. If you find from the evidence, and under the instructions of the Court, that the plaintiff is not entitled to recover, then you must not consider the question of damages. The fact that the Court gives any instructions on the question of damages, or that counsel has discussed such subject, is not to be taken by you as any intimation by the Court, or any admission by counsel for the defendant, that the defendant is liable."

But if the objected to part of the plaintiff's instruction No. 12 had led to some possible confusion or misunderstanding by the jury, or if it were somewhat prejudicial to the defendant that the jury knew it had paid a sum to the plaintiff, then the defendant itself having in the first place made the somewhat ambiguous payment, voluntarily, and having injected and brought that matter into the case in the first instance by its pleading (perhaps unnecessarily), must bear its share of responsibility for any possible confusion, misunderstanding, ambiguity, and prejudice which that

28

element and the instruction relating thereto possibly may have caused. The defendant did not submit but could readily have submitted, if it had wished, an instruction referring to the whole subject in more detail and more carefully spelling out, if such was felt necessary (although we think instruction No. 12, as it is, was reasonably clear, when read in its entirety and with the other instructions), that such payment had no bearing on the question of liability, but was to be considered by the jury, if at all, only on the question of damages if the jury found the defendant liable. Not having seen fit to do so, and having itself initiated the payment and injected the matter into the case, and having made no objection to the introduction of evidence as to the bulk thereof, the defendant is in no position to complain. The use of the phrase "otherwise" therein is somewhat vague and leaves something to be desired, but absolute perfection in instructions is not required and we do not regard it alone as prejudicial.

There was, hence, no reversible error in the objected to portion of plaintiff's instruction No. 12 under the conditions presented here.

Nor was there error in not giving the defendant's offered instruction No. 28. That offered instruction read:

"If you find from the evidence, and under the instructions of the Court, that both the plaintiff and the defendant were guilty of negligence, then you must not compare the negligence of the plaintiff with that of the defendant, for in such case the law is, that it makes no difference which was guilty of the greater negligence."

The court gave defendant's instruction No. 23, which read:

"It was the duty of the plaintiff to use reasonable care to avoid injury to himself. If you find from the evi-

dence, and under the instructions of the Court, that the plaintiff failed to use such care just before and at the time of the occurrence in question, and if you also find that such failure, if any, proximately contributed to cause such occurrence, then the plaintiff was guilty of contributory negligence and cannot recover from the defendant, whether or not the defendant was guilty of negligence."

The defendant's given instruction No. 23 adequately and fairly covers the subject of contributory negligence as to the plaintiff. It does not literally, in so many words, inform the jury that if they found both the plaintiff and the defendant guilty of negligence proximately contributing to the injury or damage complained of there could be no recovery,—as the defendant infers would have been done by its offered instruction No. 28,—but the language therein "then the plaintiff was guilty of contributory negligence and cannot recover from the defendant, *whether or not the defendant was guilty of negligence*," in substance, does exactly that and is perfectly clear. Furthermore, the defendant's offered instruction No. 28, it will be observed, does not include after the phrase "guilty of negligence" the customary further phraseology "which proximately contributed to the injury or damage complained of,"—or that in substance,—and hence it is not accurate in and of itself: Hemphill, Ill. Jury Instructions, Vol. 2, P. 118–119. Though it might be a proper "companion" instruction to be given with given defendant's instruction No. 23, and if so given might not necessarily be reversible error, considering all the instructions as a series, we do not perceive that it is at all necessary when instruction No. 23 is given. Mowat v. Sandel (1931) 262 Ill. App. 395, the only case cited by the defendant on this point, held it was reversible error to refuse a defendant's offered instruction somewhat similar to the present defendant's refused

30

instruction No. 28, but which had in it after the phrase "guilty of negligence" the further language "which proximately contributed to the injury or damage complained of," and the case is not authority that it is reversible error to refuse the present defendant's offered instruction No. 28 in its present form and under the circumstances presented here when defendant's instruction No. 23 is given in its present form.

The judgment will, therefore, be affirmed.

Affirmed.

DOVE, P. J. and EOVALDI, J., concur.