Harold A. Wooff, Plaintiff-Appellee, v. Allen Henderson and Thomas Martin, Defendants, Thomas Martin, Appellant.

Mildred Wooff, Plaintiff-Appellee, v. Allen Henderson and Thomas Martin, Defendants, Thomas Martin, Appellant.

### Gen. No. 64–F–12.

Fifth District.

March 2, 1964.

Rehearing denied March 24, 1964.

Reed and Armstrong, of Edwardsville, for Thomas Martin, appellant.

Cox, Smith & Bassett, of Wood River, for appellees.

REYNOLDS, J.

This case arises from a three car collision on Illinois Route No. 67, near Godfrey, Illinois, on May 19, 1961. The point of collision was near the south end of the Monticello Plaza Shopping Center. Immediately north of the shopping center there is a bank, a filling station and a church. From the church to a driveway entering the shopping center at the south is a distance of about

650 feet. The highway is four laned pavement. The time was about 6:30 p. m., but it was still daylight, pavement was dry and the weather good. All three cars were headed southwardly. At the time of the collision, the Martin car was in the inside southbound lane and stopped. The Henderson car overtaking the Martin car, had been in the outside southbound lane, but had crossed over to the inside lane. The Henderson car collided with the right rear of the Martin car, and then crossed over into the outside southbound lane where it (the Henderson car) was hit by the Wooff car.

In the beginning, there were two suits, one by Harold A. Wooff against both Henderson and Martin, and one by Mildred Wooff against both Henderson and Martin. The causes were consolidated and tried before a jury. The jury returned a verdict finding in favor of the plaintiffs and against the defendants, Allen Henderson and Thomas Martin, assessing Mildred Wooff's damages at $17,000 and Harold Wooff's damages at $6,500. Defendant Thomas Martin's post-trial motion was denied and judgment entered on the verdicts. Martin appeals. Henderson does not appeal.

The appellant contends on appeal that if there was any negligence on his part shown by the evidence, it was not the proximate cause of the plaintiff's injuries, that the verdicts were against the manifest weight of the evidence and that the trial court erred in giving Plaintiff's Instruction No. 4. Determination of the first two of appellant's contentions must depend upon the evidence.

The Martin car had turned into the inside lane about 600 feet north of the point of collision, and stayed in it to the place where he stopped to make a left hand turn into the shopping center. Martin and his wife both testified he put on his turn lights, had his brake on and came to a gradual stop. He was waiting for

northbound traffic to pass so that he could cross the northbound lanes into the shopping center. Both estimate they waited one minute for northbound traffic to pass. Both say the turn indicator was clicking while he was waiting. After the accident, State Trooper Files appeared on the scene to investigate the accident. Files testified he asked Martin to turn on his turn indicator and that Martin did not answer. That he turned them on and they were working. Martin apparently did not hear the request to turn on the turn indicator, and did not respond in any way. Mrs. Martin says she heard the request. Later, Sergeant Wilson Schultz of the State Police came up. Schultz knew the Martins and tested the Martin car to see if it was safe to drive. He tested the turn indicator and said it was working. He found the Martin car unsafe to drive and drove them home in his car. Schultz' testimony is in sharp conflict with that of Files. Schultz testified he talked with Files some time after the accident and asked Files whether he had checked the signal lights and Files did not remember. Files admitted that it was customary to note on his report whether the signal lights were working but that he did not do so. Files denied talking with Schultz after the accident. Files admitted on cross examination that two or three weeks before the trial he had stated he did not remember about checking the lights, but did remember it about two days before the trial when talking with the attorney for the plaintiffs.

Henderson testified he saw a truck just off the pavement, about 100 feet north of the entrance to the shopping center. He then pulled into the passing or inside lane and then first observed the Martin car about 100 feet in front of him. He estimated the speed of the Martin car at about 2 or 3 miles per hour. He saw no brake or turning lights. He was driving 40–45 miles per hour. Proceeding south in the inside lane

he was within two car lengths of the Martin car when it dawned on him that Martin was going slower than he thought. He then swerved back to the outside lane but couldn't cut back in time and his left front caught Martin's right rear. After the collision with the Martin car, his car was stopped three or four seconds before the impact of the Watts car.

Loretta Watts, driver of the Wooff car, is the daughter of the plaintiffs. She first saw Henderson when he was in the inside lane, she being about a car length behind him and in the outside lane. She estimated the speed of Henderson's car and her own at 40 to 45 miles per hour. She did not see the Henderson car hit the Martin car. She did not know how far Henderson was from her when he began to swing over into the outside lane. She put on her brakes, but her car hit the left side of the Henderson car. On deposition, this witness testified that when she first saw the Martin car it looked like it was stopped, and that she could not say whether Martin had any signal lights on. At the trial, she changed her testimony somewhat to say that when she first saw the Martin car she could not be sure whether it was moving or stationary and that she did not see any signal lights. Mildred Wooff did not see either the Martin car or the Henderson car.

In the trial of the case, it seems there was considerable emphasis on whether Martin had his turn lights on while waiting to turn. This court cannot see where this is important. If Martin had attempted to turn and the collision had occurred while he was making the turn or, as a result of his turning, the question of whether his turn lights were working or were on, would be important. Here, he had stopped to make a turn. He was sitting still, waiting for northbound traffic to pass, so that he could make the turn. He had made no effort to turn. While sitting still, in the proper lane for a turn, he was struck from

behind by Henderson. It would seem to be of little consequence as to whether he had signalled for a turn, was signalling for a turn, or had not signalled, if, in fact, he was not turning or had turned before the accident. The turning or not turning of the Martin car did not cause the accident.

It may be argued that Martin had no right to stop his car on the inside lane or to slow his car just before the entrance; that he was driving too slow just before the accident. Yet both Martin and his wife testify he came to a gradual stop and waited at least a minute for northbound traffic to clear. While a minute was the estimate and may be too long a time, yet it seems clear that if their testimony is to be believed, the Martin car was stopped for a difinite period of time before being struck in the rear. The answer to this argument is that Martin was where he had a right to be. He had stopped as he had a right to do. He had stopped because he could not cross the northbound lanes in the face of northbound traffic. Martin had performed every duty and taken every precaution a reasonable person would be or could be expected to do and take, under the circumstances. Yet, the jury found that he was negligent, and returned a verdict agaist him and Henderson. Unquestionably, on the testimony, Henderson was guilty of negligence. The question of negligence on the part of Martin must rest upon the assumption that he set into motion a chain of circumstances which caused the accident. Or, in other words, that the actions of Martin were the proximate cause of the injuries to Wooff and his wife.

Appellant relies upon the case of Walker v. Illinois Commercial Tel. Co., 315 Ill App 553, 43 NE2d 412, and the plaintiffs rely upon Schiff v. Oak Park Cleaners and Dyers, 9 Ill App2d 1, 132 NE2d 416, Ney v. Yellow Cab Co., 2 Ill 74, 117 NE2d 74, and Cardona v. Toczydlowski, 35 Ill App2d 11, 18 NE2d 709. The

Walker case involved the parking of a telephone company truck with pole trailer on a street so as to obstruct the vision of drivers approaching an intersection. A collision occurred and Walker sued the other driver and the telephone company, and obtained judgment against both. The court in that case held that although the initial act of negligence may be the occasion for an intervening cause which intervenes and produced the injury, the intervening cause will be held to be the proximate cause of the injury unless the intervening is within the control of the party responsible for the initial act. And the court said that the truck being there, at that particular time, did nothing more than furnish a condition by which the injury to the plaintiff was made possible.

The position of the plaintiffs is that proximate cause is a question of fact for the jury. Citing Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74. The Ney case is cited with approval by Schiff v. Oak Park Cleaners & Dyers, 9 Ill App2d 1, 132 NE2d 416. In that case the parked truck of the defendant was held to be the proximate cause of injury to a child by the automobile of a third party. The court in the Ney case said:

> "Where an independent agency intervenes, the solution of the problem becomes aggravated. The rules are without substantial contradiction and are universally applicable, but their practical application yields varying and contradictory results. In Neering v. Illinois Central Railroad Co., 383 Ill 366, we stated: 'What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such character as an ordinarily prudent person ought to have foreseen as

425

likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act.' "

The case of Cardona v. Toczydlowski, 35 Ill App2d 11, 18 NE2d 709, follows the holding of the Ney and Schiff cases that the determination of proximate cause is a fact question for the jury, but followed the rule laid down in the Walker case that if the negligence charged did nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause, which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate or immediate cause. That the cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act. And the court in that case held further that the intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was, itself, probable or foreseeable. Citing Johnston v. City of East Moline, 405 Ill 460, 91 NE2d 401. And the court in that case cited Merlo v. Public Service Co. of Northern Illinois, 381 Ill 300, 45 NE2d 665, as holding that the test should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence.

In the case of Merlo v. Public Service Co. of Northern Illinois, 381 Ill 300, 45 NE2d 665, the court said:

"If the act of a third party is the immediate cause of the injury and is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the original wrong, the connection is broken and the first act or omission is not the proximate cause of the injury. There may be more than one proximate cause of an injury."

This court is in accord with the rule of the many cases holding that a verdict may not be set aside merely because the jury could have drawn different inferences, or because judges may feel, that other conclusions than the one drawn by the jury would be more reasonable. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847; Cloudman v. Beffa, 7 Ill App2d 276, 129 NE2d 286; Pantlen v. Gottschalk, 21 Ill App 2d 163, 157 NE2d 548. It is likewise agreed that upon a question of fact, the question must be submitted to a jury for determination. Questions of negligence, due care and proximate cause ordinarily are questions of fact. Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74; Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 125 NE 2d 47; Ritter v. Hatteberg, 14 Ill App2d 548, 145 NE2d 119; Pantlen v. Gottschalk, 21 Ill App2d 163, 157 NE2d 548. Yet, as said in Pantlen v. Gottschalk, 21 Ill App 2d 163, at page 172, 157 NE2d 548:

"Our courts have passed on the question many times but in the final analysis the facts of the particular case being reviewed are determinative. Because the facts in each case present different questions, no hard or fast rule can be laid down. However, our courts have stated general rules that must apply to any case in determining whether or not the question is one of fact or law."

427

And the court in that case discussing the question of contributory negligence, said:

> "Contributory negligence becomes, however, a question of law when it can be said that all reasonable minds would reach the conclusion, under a particular factual situation, that the facts did not establish due care and caution on the part of the person charged therewith."

Our courts have held that while a reviewing court is precluded from weighing the evidence, it may examine the evidence to determine whether, as a matter of law, there is any evidence in the record to prove the essential elements of the case. Tucker v. New York Cent. & St. L. R. Co., 12 Ill2d 532, 147 NE2d 376; Pantlen v. Gottschalk, 21 Ill App2d 163, 157 NE2d 548.

Our courts have also held that there can be no dispute with the proposition that a reviewing court has a duty to reverse where the verdict is against the manifest weight of the evidence. Piper v. Lamb, 27 Ill App2d 99, 169 NE2d 164.

The verdict of the jury in this case, insofar as Martin is concerned, must rest upon the slow speed theory. It must be proven that Martin was guilty of some act of omission or commission, in the operation of his automobile. It cannot be said that he turned his vehicle without giving the proper signal as provided by statute because there is no evidence that he turned his automobile from a direct course, except when he turned into the inside lane from the outside lane some 500 feet north of the point of collision. He cannot be held to have violated the statute which required that no person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided by statute, to the driver of any vehicle immediately to the rear, when there is

opportunity to give such signal, because, there is no evidence of his stopping or suddenly decreasing the speed of his automobile. The only evidence in all of the record that might tend to support the theory that Martin was negligent would have to rest on the theory that he was driving his automobile at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation of his vehicle or in compliance with law. Chapter 95½, § 148, Ill Rev Stats (1959). Henderson, the other defendant, testified that when he got two car lengths from the Martin car he saw Martin was moving very slow. That when he first saw the Martin car a hundred feet in front of him, Martin was moving 2 or 3 miles per hour. That he was approximately two car lengths behind the Martin car and it dawned on him that Martin was moving or going slower than he thought. Martin and his wife testified he was stopped and had been stopped for some time, waiting for northbound traffic to clear. Loretta Watts, driver of the Wooff car testified Martin was stopped. There is no testimony that there was any traffic in the southbound lanes, other than the Martin car, the Henderson car and the Wooff car. The road was straight, with a 2 per cent grade, yet Henderson says he did not see the Martin car until he was about 100 feet behind it. Yet undoubtedly, the Martin car was in plain sight for 500 feet. Our courts have held that one cannot look with unseeing eye and not see the danger which he could have seen with the proper exercise of his sight, or stated another way, one will be deemed to have observed that which would necessarily have been seen if he looked. Dee v. City of Peru, 343 Ill 36, 174 NE 901; Pantlen v. Gottschalk, 21 Ill App2d 163, 157 NE2d 548. Yet taking Henderson's testimony that the Martin car was moving 2 or 3 miles an hour, or very slowly, and giving to it all

429

intendments and inferences that may be drawn therefrom, does it prove that Martin was driving his motor vehicle as to impede or block the normal reasonable movement of traffic, or that this claimed slow speed of the Martin vehicle was the primary or moving cause, setting into movement a chain of events that culminated in the injury to the plaintiff? We think not.

In this case the evidence shows, as a matter of law, that Martin was not negligent in any way. He did what any reasonable person would and should do under the circumstances. There is nothing to show that he could have reasonably anticipated that Henderson would drive 500 feet without seeing an object as large as a motor vehicle on the highway ahead of him. He could not have reasonably anticipated that Henderson would swing into the inside lane and drive into the rear of the Martin car. He could not reasonably anticipate that stopping at the proper place to make a left turn, waiting until he could safely cross the northbound lanes of traffic, would result in a collision with the rear of his car and the resulting injuries of the plaintiffs. The result was not the natural and probable result of Martin stopping his car for a turn. The reckless driving of Henderson was an independent act that intervened between Martin's stopping his car and the collision between Henderson's car and the Wooff car. While Martin's stopping may have furnished a condition by which the injuries to the Wooffs was made possible, the creation of the condition was not the proximate cause of the injuries sustained by Mr. and Mrs. Wooff.

In this case, as a matter of law there is no evidence of any wrongdoing or omission on the part of Martin and consequently no evidence of negligence in any way, contributing or causing the injuries to Mildred Wooff or Harold Wooff. The evidence shows, as a

matter of law, that the acts of Martin under the circumstances were not the proximate cause of the injuries to the Wooffs. The verdict of the jury is clearly and palpably against the weight of the evidence.

The judgment will be reversed.

Reversed.

DOVE, P. J. and WRIGHT, J., concur.